**McFARLAND, Plaintiff-Appellee, v. SHIRKEY, Defendant-Appellant.**

Ohio Appeals, Tenth District, Franklin County.

No. 5737.   Decided March 18, 1958.

Tyack & Gertner, Columbus, for plaintiff-appellee.
John H. Lewis, Columbus, for defendant-appellant.

### OPINION

Per CURIAM.

Frank Shirkey, defendant-appellant, has appealed on questions of

law from the verdict and judgment of the Common Pleas Court of Franklin County, Ohio. In that court, $2,000 damages were awarded against Shirkey and in favor of George McFarland, plaintiff-appellee. In the court below, the petition was regarded as setting forth a cause of action for malicious prosecution.

Shirkey lives in Franklin County near Grove City. On the evening of Sunday, November 8, 1953, his home was burglarized and $790 in currency hidden in a box was stolen.

Shirkey discovered the loss early the next morning, made immediate report of it to the Sheriff and two deputies arrived in less than an hour and began the investigation. From that point progress in solving the crime appears to have been slow. At the time, Shirkey was unable to name any suspects, but events occurring subsequent to the burglary and a reappraisal of events and occurrences prior thereto, caused him to suspect and accuse George McFarland and Carl Medders, son-in-law of McFarland, both of whom lived nearby. Shirkey kept the Sheriff's office fully informed of all clues coming to his attention. Late in December, nearly two months after the burglary, it appeared little progress had been made toward solving the crime. Shirkey was informed if he wanted anyone arrested, he would have to file an affidavit and he went to a nearby Justice of the Peace and signed an affidavit charging McFarland and Medders with burglary and grand larceny.

When copies of the affidavit and warrant were given to the Sheriff to make an arrest, action was refused on the ground that they were not properly made out. Several weeks more passed by and a conference was held in the office of the Prosecuting Attorney attended by Sheriff's deputies, a Justice of the Peace, Shirkey and an Assistant Prosecutor. The latter prepared an affidavit alleged to be in correct form. Shirkey signed the same and a warrant was issued thereon and a second time delivered to the Sheriff. It appears that no action was taken on this latest warrant at least for several months.

The new affidavit was filed January 18, 1954 and while the record is not clear as to the dates, it appears that McFarland was in the Sheriff's office on three occasions. On two of the occasions he received a written notice to appear for questioning. On one of these visits he was questioned and asked if he would furnish a set of his fingerprints. He agreed to this and they were taken. Except for the fact that the questioning occurred in the office of the Sheriff's deputies in the jail, it does not appear that there was any confinement. McFarland was never placed in a cell nor was he required to furnish bond. He appears never to have been slated in. On the second of the two visits to the County Jail, pursuant to a written order to appear, the procedure seems to have been similar to the first except that McFarland and Medders were asked if they would voluntarily take a lie detector test and both agreed to take such test. On the third visit to the County Jail it appears that McFarland and Medders were transported in a car operated by a deputy sheriff. It would appear that at the end of the questioning the third time, both were permitted to leave the jail voluntarily.

McFarland did not take the lie detector test, being away from home on private business at the time set for the test.

The one other official proceeding occurred during May 1954 when a preliminary hearing was held by the Justice of the Peace before whom the burglary and larceny charges were pending. Present were Mc-Farland, Medders, their attorney, the Justice of the Peace, Assistant Prosecuting Attorney, Shirkey and several prosecution witnesses. At the conclusion of the hearing, the charge was dismissed.

The petition in this case omitting the heading, caption, signatures and other formal parts thereof reads as follows:

"Plaintiff says that on or about the 18th day of January, 1954, the defendant falsely accused said plaintiff of burglary and grand larceny and caused the plaintiff to be imprisoned in the Franklin County Jail in Columbus, Ohio, to which County Jail he was confined and deprived of his liberty.

"Plaintiff says that said accusation was false and that said arrest was without legal proceedings, as was also his said imprisonment. Plaintiff says that in so doing the defendant acted wantonly and without probable cause and with reckless disregard for the rights of the plaintiff, said plaintiff being released by a Court of competent jurisdiction and the charges against this plaintiff dismissed.

"Plaintiff says that at the time and before such arrest, he was generally regarded as a man of good reputation and standing and as a result of such unlawful arrest and imprisonment this plaintiff suffered humiliation, indignities, mental anguish and injury to his business and reputation.

"Plaintiff says that by reason of such unlawful and wrongful acts of the defendant he has suffered damages in the sum of Twenty Thousand Dollars, and further has incurred expenses including attorney fees of approximately Three Hundred Dollars.

"WHEREFORE, plaintiff prays for judgment against the defendant in the sum of Ten Thousand Dollars ($10,000.00) as compensatory damages and for Ten Thousand Dollars ($10,000.00) as punitive damages and, in addition thereto, a reasonable sum for attorney fees and expenses, all for the total judgment of Twenty Thousand Three Hundred Dollars ($20,300.00); together with his costs herein expended."

As above stated this petition was treated as stating a cause of action for malicious prosecution. For example, in arguing the case to the jury, counsel for plaintiff states (Record, p. 485): "It is what we commonly refer to as a malicious prosecution." The trial court in his charge to the jury likewise refer to it as an action for malicious prosecution stating (Record, p. 520): "This is a so-called action for malicious prosecution * * *."

Reference was made by counsel for appellant to Ohio Procedural Forms as being a source of the form used for the cross-petition. This well-known authority appears also to have been followed in drafting plaintiff's petition, which appears closely to resemble Form 4605, page 505, Volume 6 (1948 Replacement), of the said Ohio Procedural Forms. While the distinction between forms of action has been largely abolished, it is interesting to note that the form apparently used as the pattern for the petition in this case was, according to the editors of Ohio Pro-

cedural Forms, designed for use in cases of false imprisonment and obviously not for use in cases of malicious prosecution. The said Form 4605 is entitled "Petition for False Imprisonment—Punitive Damages."

Of course, the matters of interest here are the allegations which are contained in the petition and we note that nowhere in plaintiff's petition are found such words as "malicious prosecution," or "maliciously," or even the word, "prosecuted." The said Volume 6 of the Ohio Procedural Forms contains several forms appropriate for use in drafting petitions in malicious prosecution actions and every one of them contains the word, "maliciously." They also describe in detail the "action" which was alleged to have been prosecuted "maliciously." The reason is clear, for malice is an indispensible element in the action for malicious prosecution. For example, in one of the forms in the said Volume 6, supra, said to be appropriate for a petition when there has been a malicious prosecution of a civil action (Form 4610), there appears this phrase:

"* * * defendant wrongfully, maliciously, and without probable cause, commenced a certain action * * *."

In another form designed for a petition for malicious prosecution of a misdemeanor case to wit, speeding (Form 4611), there appear these words:

"* * * defendants falsely and maliciously and without reasonable or probable cause * * *."

And still another form designed for petitions for damages for malicious prosecution of a charge of larceny (Form 4613), there appear the following words:

"* * * falsely and maliciously, and without reasonable or probable cause therefor, filed an affidavit against the plaintiff before and in the _____ Court of _____, Ohio, charging him with the offense of grand larceny, * * *."

Referring to Ohio Civil Practice Manual (Baldwin, 6th Edition) there is only one form for use in suits for damages for malicious prosecution, being Form 41-32. Said form reads in part as follows:

"* * * falsely and maliciously and without probable or reasonable cause * * *."

This becomes revelant in light of the fifth assignment of error, which is as follows:

"The Court erred in overruling Defendant's Motion for a Directed Verdict."

It is the contention of defendant that the record fails to disclose a scintilla of evidence of malice and that this is an essential and required element of plaintiff's case without which said case must fail. No where does the record disclose any evidence that the actions of Shirkey in this case were for an ulterior or improper purpose nor does any one doubt that Shirkey sincerely believed McFarland and Medders were guilty of the offense charged. What we must consider here is not whether the evidence is convincing beyond a reasonable doubt of the guilt of McFarland and Medders, but whether Shirkey did or did not believe in the truth of the charge and if he did so believe whether or not a reasonable man would have been warranted in so believing.

Shirkey's original suspicion was aroused by the manner and demeanor, first of McFarland, and second of Medders, during separate conversations with them. It was during a casual conversation, according to Shirkey, when he merely stated that he had had bad luck and that his place was burglarized, that both McFarland and Medders changed their demeanor, hung their heads, lowered their voices and were unable to look him in the face.

As before stated the burglary occurred Sunday evening, November 8, 1953. Shirkey testified that he personally had observed McFarland in the immediate vicinity on Friday and Saturday just before the burglary. Shirkey's daughter, Mrs. Almeda Hahn, had driven out to the Shirkey home on the Saturday night just before the burglary to pick up her daughter. Mrs. Hahn left her daughter with the Shirkeys while she worked at a supermarket and left her place of employment at 10:00 P. M. She stated that by the light of the headlights of her automobile she observed a man prowling in the vicinity of the Shirkey home as she drove up. She testified positively and without equivocation that she knew McFarland when she saw him and that the man who came out of the dark shadows alongside her father's house at 10:00 P. M. on the day before the burglary and furtively darted across the road, was McFarland. This was on Saturday night, one day before the burglary. When Shirkey reported his suspicion as to McFarland and Medders to the Sheriff's investigators he was told that they had been questioned and McFarland had stated he was in Chicago having left Franklin County near the middle of October and did not return until the day after the burglary. In light of what Shirkey testified he saw with his own eyes, corroborated by the testimony of the daughter, we cannot find that a reasonable man under the circumstances would have acted in any different manner.

No one disputes the fact that Shirkey's house was looted. The crime in such case, labeled burglary of an inhabited dwelling in the night season, is denounced and penalized by Ohio criminal law in the severest of terms. It carries with it the penalty, upon conviction, of life imprisonment unless the jury trying the case recommends mercy, when the mandatory penalty becomes five to thirty years. Those convicted of this crime may face a mandatory penalty of life imprisonment. Only murder in the first degree carries a more severe penalty.

It is therefore apparent that there was a total absence of evidence of malice on the part of Shirkey. This was a fatal defect in the evidence offered by plaintiff in support of his cause of action and the motion for a directed verdict should have been sustained. It follows then that the fifth assignment of error is well taken and must be sustained. In light of the holding we have just made, the seventh assignment of error, namely, the overruling of the defendant's motion for a new trial, likewise is well taken and must be sustained.

Looking at the petition in its most favorable light, it states a cause of action for false imprisonment. False arrest or false imprisonment may occur when the arrest or imprisonment is not authorized by adequate court process. A warrant issued by a court unless utterly void

is a complete defense to an action for false arrest or false imprisonment. The petition refers to January 18, 1954, which unquestionably is the date on which the second affidavit was filed with the Justice of the Peace. There is no evidence that an arrest or imprisonment took place on or about that date. Evidence seems to be reasonably clear that nothing was done for about four months until May 1954 when a hearing was had before the Justice of the Peace on the charge and it was promptly dismissed.

Counsel for plaintiff in argument before this court frankly admitted that they did not proceed on the theory of false imprisonment stating that because plaintiff was never placed in a cell, they doubted if they could produce evidence which would sustain such cause of action.

Hence, it is that even though the petition may have been sufficient to allege the elements for an action for false imprisonment, the evidence in support thereof is insufficient to sustain it. What then about an action for malicious prosecution? We have heretofore referred to the absence of evidence of malice on the part of Shirkey. It should be noted that there was a failure to allege malice in the petition and that the entire claim of that document is based upon the deprivation of liberty and the unlawful interference therewith rather than humiliation, embarrassment and damage to reputation, which are the basis of action for malicious prosecution.

Plaintiff was asked only one question having to do with the matter of damage to reputation, humiliation or embarrassment arising from the criminal proceedings. In response thereto he stated that at the two feed stores where he bought feed for his horses, they asked him concerning his account or bill. This is difficult to understand in light of plaintiff's flat unqualified assertion that he never charged such purchases but always paid for them in cash.

We now turn our attention to the first assignment of error made by defendant. It will be remembered that the case was tried to a jury upon the petition of plaintiff, the answer and cross-petition of the defendant. The answer consisted of a general denial. The cross-petition alleged that plaintiff and another had wrongfully taken $790 from defendant's home and asked damages therefor. When the taking of testimony had been completed and both sides had rested, plaintiff moved to dismiss defendant's cross-petition. This motion was sustained by the court and the court proceeded on its own motion to instruct the jury to disregard the evidence in support of the cross-petition.

Defendant's objections thereto are brought up in his first assignment of error, which is as follows:

"The trial court erred in instructing the jury that they were not to consider the Cross Petition or any evidence offered in support of the Cross Petition."

It is the contention of defendant that the instruction of the court that no evidence offered in support of the cross-petition could be considered by them, took away from the jury all of the evidence offered by way of defense. The principal theory of defendant was that plaintiff was guilty of the burglary and grand larceny. Much of the evidence

offered by the defendant was in support thereof. The stenographic report as to just what took place (Record, p. 484) is as follows:

"THE COURT: You may open the argument, Mr. Tyack. You have thirty minutes on each side.

"Ladies and gentlemen of the Jury, the Court has dismissed the defendant's cross petition and you will not consider that cross petition or any evidence offered in support of that cross petition at this time.

"MR. LEWIS: Note an exception to the statement of the Court in that the evidence offered in support of the cross petition is the same evidence that is offered in defense.

"THE COURT: Now, I would have you understand that only the evidence that was offered in support of the cross petition is excluded. Such evidence, for instance, as the unlawful removal of $790.00 from the defendant's house by George McFarland, and his attorney's fees for the defense of this case. Those are the two items of evidence which you will disregard.

"MR. LEWIS: Note an exception.

"THE COURT: Proceed with the argument."

It is, of course, well settled that in such a case as this the defendant has a right to put in issue the question of the guilt or innocence of the plaintiff. The plaintiff in such case was obligated to prove more than the mere filing of the charge and subsequent dismissal. Of paramount importance was the proof with respect to malice on the part of Shirkey and McFarland was also required to show there was a want of probable cause.

On the part of Shirkey, his strongest defense would be to prove that McFarland was in fact guilty of the burglary and larceny. In 25 O. Jur. 939, Malicious Prosecution, §66, it is stated:

"The defendant in an action for malicious prosecution may introduce evidence to prove or tend to prove that the plaintiff was actually guilty of the offense charged, despite his discharge or acquittal. Such evidence is always admissible. * * *."

In 34 Am. Jur. 788, Malicious Prosecution, §147, it is pointed out that a plaintiff who brings an action for malicious prosecution puts in issue his innocence. It is further stated that defendant may offer competent evidence tending to prove the actual guilt of the plaintiff. Said section reads in part as follows:

"It has frequently been held that the plaintiff in an action for malicious prosecution must, notwithstanding his acquittal in the original prosecution, always be regarded as tendering the issue of his innocence or freedom from liability, and must fail in his action if that innocence or nonliability can be disproved, whether the prosecutor acted from malicious motives or not, and whether or not he knew of the facts establishing the plaintiff's guilt or liability. Competent evidence tending to prove the actual guilt or liability of the plaintiff is, therefore, generally held to be admissible in favor of the defendant. In the language of one of the decisions thus holding, the law considers that if a criminal is fortunate enough to escape conviction, he should rest content with his good luck, and not belabor one who suspected his guilt and acted accordingly. * * *."

Hence, it is clear that the instruction given by the trial court to the jury had the effect of removing from the jury most of the evidence offered by way of defense by Shirkey. Such ruling constituted prejudicial error and the first assignment of error is, therefore, well taken.

Under such circumstances it becomes the duty of this court to render the judgment which the court below should have rendered and (in addition to finding the prejudicial errors herein above referred to), it becomes the duty of this court to reverse the judgment of the court below and to enter final judgment in favor of the defendant.

In light of the conclusions which we have reached, no useful purpose will be served by giving consideration to the other errors assigned.

PETREE, PJ, BRYANT and MILLER, JJ, concur.