William SESSOMS, Plaintiff-Appellee,

v.

The UNION SAVINGS & TRUST COMPANY, Defendant-Appellant.

No. 15619.

United States Court of Appeals Sixth Circuit.

Nov. 27, 1964.

---

Ashley Van Duzer, Cleveland, Ohio, Paul W. Walter, Arthur P. Steinmetz, Cleveland, Ohio, on brief, for appellant.

Charles R. Miller, of Rudd, Ober & Miller, Cleveland, Ohio, for appellee.

Before CECIL and PHILLIPS, Circuit Judges, and TAYLOR, District Judge.

ROBERT L. TAYLOR, District Judge.

This is an appeal from the United States District Court for the Northern District of Ohio from a $20,000.00 judgment as damages for malicious prosecution. The jury rendered a verdict for $30,000.00 which was reduced by the District Judge to $20,000.00.

William Sessoms will be referred to as plaintiff and The Union Savings & Trust Company as defendant.

Plaintiff was a graduate of Grinnell College in Grinnell, Iowa. He entered law school at the University of New Mexico. At the end of the term in 1958 he came from Albuquerque, New Mexico to Utica, New York. He returned to New Mexico in the school year 1958–59 but was forced to drop out for lack of funds. He was returning to Utica, New York, where he had worked the summer before, but stopped at Warren, Ohio where, with the help of the Urban League, he secured work at a funeral home for a short time. Thereafter, he secured work with the Trumbull Memorial Hospital as an orderly.

He had established a bank account with a bank in Utica, New York and continued to do business with that bank when he moved to Warren. He established a relationship with the defendant's bank by cashing several of his own checks which he had drawn on the Utica bank. In establishing his connection at defendant's bank, he had been advised by Parker, the head teller, to deal with one teller to whom he had been introduced and who would be acquainted with him. This he had done and the teller was Waldman. He had received information from the Utica bank that he was overdrawn $8.00 on a $10.00 check, and after work, at about 4:00 p. m., on June 3, 1960, he went to the defendant's bank to make arrangements to cover the $8.00 deficit on that check. When he entered the bank he saw there were several people in line at Mr. Waldman's window and he decided he might as well endorse and cash his payroll check which he had received that day. So before entering the line he endorsed the check and when he reached Waldman he had two items to take up with him, to-wit, the $8.00 coverage and the cashing of the $91.93 payroll check from Trumbull Hospital. He passed his payroll check to Waldman

with the request that Waldman cash it and retain $8.00 to cover the deficit in the Utica bank. Waldman then left the window temporarily and talked with Parker as to how to handle the $8.00 transaction. He returned shortly and then excused himself again for about ten minutes. Plaintiff became impatient and, as he testified, decided to pay the $8.00 out of other funds and asked the return of his check.

Just what happened in connection with the $91.93 check is in controversy. Waldman claimed that when the check was presented he placed it in his machine and stamped it. The paper tapes in the machine corroborate Waldman's statement that the following notation: "91.93–19" was made. The 91.93 was the face amount of the check, the 19 was Waldman's teller number and the minus mark between the two sets of figures indicated that the check had been cashed. Had it been deposited, a plus mark would have appeared. There was some confusion when Waldman returned to the cage after talking to Parker. The plaintiff testified that the check was returned to him by Waldman without cashing it and that he paid $8.00 out of his pocket to cover the Utica check. Waldman was not sure what happened to the check. He testified he might have returned it to plaintiff but he was positive, and stated many times in his testimony, that he cashed the check and paid the amount over to plaintiff. Whatever may have occurred at the bank on that day, the evidence is clear that plaintiff got the check back into his possession and either on the same afternoon, which was Friday, or early in the next week, cashed the check at the Carlisle-Allen Department Store.

Later in the day on Friday, a clerk from the proofing department of the defendant bank called Waldman and stated that he was minus a check. The amount of discrepancy in his account for the day was $91.94 and he testified that he seemed to recall that the amount of plaintiff's check was in the neighborhood of that amount. The check cleared through the bank in the middle of the following week and Waldman, who had spent much time hunting for the check, finally found it. The reverse side of the check showed that it had been endorsed by plaintiff and had been deposited in the defendant bank by the Carlisle-Allen store. Waldman testified that on the face of the check appeared the notation referred to above, namely, 91.93–19, indicating that he had cashed it and that somehow it had gotten into the hands of plaintiff and that the latter had cashed it a second time. Plaintiff on the other hand denied that the check had been cashed at the bank and denied that the notation 91.93–19 appeared on the check when it was returned to him.

An investigation was made by several officials of the bank. It was discovered that plaintiff had previously cashed a small check on another bank for which there were no funds. The supposed $8.00 deficit on June 3, 1960 was a second instance of difficulties in plaintiff's accounts.

An official of the bank talked to plaintiff and he denied that he had cashed the check at the bank and stated that he had cashed it early the following week at the store.

The testimony of Mrs. Biggers, who cashed the check for him, was not conclusive, whether the 91.93–19 notation appeared on the face of the check at the time that she had cashed it. The possibility that plaintiff had reached under the window at the bank and had taken the check off the counter during Waldman's absence from his cage was considered by the bank. One official testified that there was room enough between the bottom of the window and the counter to reach in about 12 to 14 inches and had the check been lying on the counter, the space between was sufficient to raise the inference that plaintiff might have been able to reach the check after it had been cashed; although, as we have indicated, plaintiff denies that it was ever cashed and says that Waldman returned it

voluntarily to him after the latter's return to the cage.

After some further investigation, Waldman, at the suggestion of the president of the bank, signed an affidavit which was made the basis of the indictment against plaintiff for grand larceny in the state court. Plaintiff was jailed and was held in jail some three weeks before he secured his freedom by making bond. The state proceeding was prosecuted and the jury returned a verdict of not guilty in plaintiff's favor.

Subsequently the present suit for malicious prosecution was brought against the bank for $250,000.00 damages. A trial of several days duration ensued and the jury found for the plaintiff and assessed damages of $30,000.00. This verdict was subsequently reduced by the District Court to $20,000.00. The bank appealed.

In a suit for malicious prosecution, it is generally held, and it seems to be the law in Ohio, that the plaintiff to recover must prove malice and lack of probable cause in the bringing of the criminal suit.

The Court has painstakingly examined not only the printed appendix but the full typewritten record made in the District Court, together with all of the exhibits. The testimony and evidence are so contradictory that the Court is not clear whether there was probable cause on the part of the bank to institute the prosecution against the plaintiff. However, after the hearing and before the charge by the District Judge, the bank made the following special request to the Court:

"Ladies and gentlemen of the jury: the Plaintiff in bringing this action against the Defendant has injected into this case his innocence. If it can be shown that the Plaintiff in an action for malicious prosecution was in fact guilty of the offense charged, although he has been acquitted in the criminal case, it cannot be claimed by the Plaintiff that there was not probable cause for the prosecution. The Plaintiff must fail in this action whether the Defendant acted from malicious motive or not or whether the Defendant knew at the time of the institution of the criminal proceedings against the Plaintiff all of the facts establishing the Plaintiff's guilt."

The District Judge declined to give said charge, to which ruling defendant then and there duly excepted. This requested charge would have placed in issue the question whether the plaintiff was, in the action for malicious prosecution, "in fact guilty of the offense charged." It also raised the question of defendant's guilt or innocence of the charge in the criminal case. The District Judge not only declined to give the requested charge, but later in his oral charge stated the following:

"In considering the question of probable cause, to which I have directed your attention, you should not concern yourself with, or consider, whether the Plaintiff was, at the time the complaint was made against him by the Defendant's officer, or as a result of the trial, guilty or innocent. That is not an issue in this case. The single question, aside from the matter of maliciousness, for you to consider is whether the Defendant's officer Waldman had, at the time of causing the arrest and prosecution of the Plaintiff, reasonable and probable cause for doing so, and this would depend upon Waldman's personal knowledge or information communicated to him of facts and circumstances at the time sufficient to excite in the mind of a reasonably cautious and prudent person a reasonable belief that the Plaintiff had stolen the check in question.

\* \* \* \* \* \*

"It is not required that a man shall prove that another was guilty of an offense before he can be said to have had probable cause for procuring his arrest. It is known and recognized that the processes of the

court, the evidence adduced by the witnesses and processes of law, may or may not convict a man; so that the inquiry here is not as to whether the Plaintiff was convicted or acquitted in the Common Pleas Court, but the question is as to whether or not Waldman, in causing his arrest, had reasonable grounds to do so."

After the completion of the charge, the Court submitted to the jury special interrogatories which were apparently prepared by the defendant and given to the Court with the request that they be submitted to the jury. Interrogatory No. 3 reads as follows:

"INTERROGATORY NO. 3:

"Did the Plaintiff cash his payroll check from the Trumbull Memorial Hospital dated June 3, 1960 in the amount of Ninety One and 93/100 Dollars ($91.93) once at the Defendant Bank and a second time at the Carlisle-Allen Department Store?

"ANSWER:          "

When the jury returned its verdict, the word "No" was written on the Interrogatory following the word "ANSWER."

The defendant, among other things, asserts that it was error to charge that Sessom's guilt or innocence was not an issue in the case and took exception to the refusal of the Court to give the requested charge which we have quoted above and to its emphasis, in another part of its charge, that plaintiff's guilt or innocence was "not an issue in this case."

It is arguable that the charge of the District Judge on this question was, if an error, corrected by Interrogatory No. 3, which clearly left to the jury the question whether plaintiff not only cashed the check once at defendant's bank but cashed it a second time at the Carlisle-Allen Department Store.

We have, therefore, the legal questions, (1) whether the guilt or innocence of a plaintiff in a suit for malicious prosecution is placed in issue in that case and (2) whether, if it is in issue, the failure of the judge so to charge was corrected by Interrogatory No. 3, which in general terms would place before the jury the question of guilt or innocence.

In McFarland v. Shirkey, 106 Ohio App. 517, 151 N.E.2d 797, 803, 155 N.E. 2d 468, 925, the Court of Appeals of Ohio said:

"It is, of course, well settled that in such a case as this the defendant has a right to put in issue the question of the guilt or innocence of the plaintiff. The plaintiff in such case was obligated to prove more than the mere filing of the charge and subsequent dismissal. * * *"

Coleman v. Reed Brothers & Co., 18 Ohio App. 316. See also, Kintner v. Cheeks, 71 Ohio App. 333, 49 N.E.2d 962; John Bright Shoe Stores Co. v. Scully, 24 Ohio App. 15, 156 N.E. 155.

In the Restatement of the Law of Torts, Sec. 657, under the general head of Wrongful Prosecution of Criminal Proceedings (Malicious Prosecution), it is said:

"§ 657. PLAINTIFF'S GUILT AS BAR TO RECOVERY.

"The fact that the person against whom criminal proceedings are instituted is guilty of the crime charged against him, is a complete defense against liability for initiating or pressing such proceedings.

"Comment:

"a. Retrial of issue of guilt. Under the rule stated in this Section the guilt or innocence of the person accused in criminal proceedings may be retried despite the termination of those proceedings in his favor. This is so even though the accused was acquitted after trial by a verdict of not guilty. * * *"

In 34 Am.Jur.—Malicious Prosecution —Sec. 147, it is said:

"*Actual Guilt or Liability of Plaintiff.*—It has frequently been

held that the plaintiff in an action for malicious prosecution must, notwithstanding his acquittal in the original prosecution, always be regarded as tendering the issue of his innocence or freedom from liability, and must fail in his action if that innocence or nonliability can be disproved, whether the prosecutor acted from malicious motives or not, and whether or not he knew of the facts establishing the plaintiff's guilt or liability. Competent evidence tending to prove the actual guilt or liability of the plaintiff is, therefore, generally held to be admissible in favor of the defendant. * * * "

In Prosser Handbook of the Law of Torts, Third Edition, Section 113, pp. 858, 859, it is said:

"A further limitation upon the action of malicious prosecution is that it is always open to the defendant to show that the plaintiff was in fact guilty of the offense with which he was charged. This defense, which is closely analogous to that of truth in actions for defamation, is supported by a similar policy in favor of encouraging exposure of the guilty. It does not depend upon the prosecutor's reasonable belief that the accused was in fact guilty, and it is available even though the criminal proceeding was begun with no such belief at all. As in defamation, the burden of proof of the issue is upon the defendant, and the guilt proved must be substantially equivalent to the charge made. The defense is available notwithstanding an acquittal in the criminal proceeding, and the question of guilt may be retried in the malicious prosecution action. The reason for this is that a verdict of not guilty does not necessarily establish innocence, but merely a failure of the prosecution to prove guilt beyond a reasonable doubt; and in the subsequent civil action, where all that is required is a preponderance of the evidence on the

issue, a further inquiry may be made before a new jury as to whether the lesser burden of proof can be sustained. Thus, while an unreversed conviction is conclusive as to guilt and bars malicious prosecution, an acquittal is not conclusive as to the plaintiff's innocence."

■ In the opinion of this Court, a plaintiff in a suit for malicious prosecution does place in issue the question of his guilt or innocence even though he was acquitted by the jury in the criminal prosecution. In Ohio, as we have noted, it is well settled "that in such a case * * * the defendant has a right to put in issue the question of the guilt or innocence of the plaintiff," and it did seek to place this question in issue by the requested charge which was refused by the District Judge. The rationale of this rule of law, as indicated in Prosser, seems to rest upon the differences in the degree of evidence required to prove guilt in the criminal case and in the civil case. In the criminal case, the prosecution is, of course, required to prove guilt beyond a reasonable doubt, and in the civil case guilt is proved simply by a preponderance of the evidence.

The District Judge stated categorically in the body of his charge:

" * * * you should not concern yourself with, or consider, whether the Plaintiff was, at the time the complaint was made against him by the Defendant's officer, or as a result of the trial, guilty or innocent. That is not an issue in this case."

As we have indicated, it *was* properly an issue in the case and there is before us a second question, whether the language of Interrogatory No. 3 corrected this erroneous charge.

In 53 Am.Jur.—Trial—Section 837, p. 614, the commentator said:

" * * * as a rule, a misdirection is not cured by a subsequent statement of a correct principle, unless the judge calls the jury's attention to the incorrect statement

and retracts or modifies it, or unless the context shows that one charge is in fact a correction or modification of the other."

A similar statement is found in 89 C.J.S. Trial § 441:

"Generally an erroneous instruction is not cured by the mere giving of correct instructions necessarily inconsistent therewith, although if the instruction is defective merely, in that it is inaccurate, misleading, confusing, or incomplete, it may be cured by another instruction.

"A correct instruction will cure the error in another only where the instructions, as a series, state the law correctly, and it is evident that no harm has been done by the erroneous instruction. Otherwise, in order to obviate the effect thereof, the erroneous instruction must be expressly withdrawn from the jury or the erroneous instruction must be corrected by a qualification referring directly to it and *a mere incidental reference to the issue in another instruction, or an implied qualification of the instruction by a later instruction, or words carrying an inference rather than a direct statement of the correct rule, or a statement that it is the duty of the jury to recall the evidence, is insufficient.*" (Emphasis added.)

In First National Bank of Huntsville v. Stewart, 204 Ala. 199, 85 So. 529, 13 A.L.R. 302, a depositor sued a bank for the dishonor of his check. The lower court charged as follows:

"If you are reasonably satisfied from the evidence in this case that the conduct of the teller of the defendant bank was characterized by a reckless indifference as to the probable consequence of his act in telling the payee of plaintiff's check that she had no funds with the defendant bank, then he would be guilty of wantonness, and plaintiff would be entitled to recover punitive damages of the defendant bank, if you are reasonably satisfied from the evidence that she was damaged as a result of such wanton conduct on the part of the teller."

The appellate court held that this charge was error and the question arose whether the effect of the error was obviated by the Court's oral charge, in which the jury was told that in the event of a finding that the bank acted in reckless disregard of plaintiff's rights, it might assess damages for the purposes of punishment. The Court held:

"The error of the charge cannot be relieved * * *. The oral charge could have corrected the error of the special charge in question only by some manner of statement or other treatment tantamount to an instruction that the jury were not to accept the charge as a correct statement of the law. The record shows no recognition nor correction of the error of the charge."

In 5A C.J.S. Appeal and Error § 1763 (1)b., it is said:

"b. Prejudicial Error

"*The judgment will be reversed where the case has been submitted on erroneous instructions which operate to the prejudice of the complaining party.*

"*When the case has been submitted on erroneous instructions which operate to the prejudice of the complaining party, the judgment will be reversed, as where the instruction was misleading. Likewise, the judgment will be reversed where the instruction was confusing, or material and harmful, or where the verdict was in direct response to the particular charge.*" (Emphasis added.)

The commentator pointed out that a judgment will be reversed for prejudicial error in the giving of instructions in, among others, a case for malicious prosecution.

It can hardly be said in this case that the instruction which was refused should not have been given and likewise it cannot be said that the instruction in the oral charge that plaintiff's guilt or innocence was not in issue could not have prejudiced the plaintiff. The jury's verdict allowed $30,000.00 in damages to plaintiff which was reduced by a remittitur to $20,000.00. Although the Interrogatory No. 3 did instruct the jury to find whether plaintiff had cashed the check twice and the jury made a finding that he did not, the language of the Interrogatory was couched in quite different terminology from the oral instruction that the guilt or innocence of the plaintiff was not in issue. In addition, the Interrogatory constituted a side reference, rather than an explicit one, to the question. The authorities which we have examined indicate that where there is an erroneous instruction, it should be corrected by a positive statement of the Court that the instruction in question was erroneous and is specifically corrected by the later instruction. We cannot say that this was done by the language of Interrogatory No. 3.

In our opinion, the defendant could not help but be prejudiced not only by the refusal of the Court to give the requested instruction but also by its positive charge to the contrary.

Although the defendant did not except to the erroneous portion of the Court's charge, it did save its exception to his failure to give what we deem to be the correct charge on the subject of plaintiff's guilt or innocence. In our opinion, the failure to except to the erroneous charge under all the circumstances did not constitute a waiver by the defendant of the error in the Court's oral charge on this subject, and the situation is distinguishable from that appearing in Transamerican Freight Lines, Inc. v. Universal Die Casting Co., 192 F.2d 931 (C.A.6).

The case must be reversed and remanded for retrial.