Judy HRUSKA, Plaintiff-Appellee,

v.

SEVERANCE SPECIALTY, INC.,
Defendant-Appellant.

No. 73-1884.

United States Court of Appeals,
Sixth Circuit.

Argued April 8, 1974.

Decided June 18, 1974.

Arthur J. Stern, Stern & Keller, Cleveland, Ohio, on brief for appellant.

Norman W. Shibley, Spangenberg, Shibley, Traci & Lancione, Cleveland, Ohio, on brief for appellee.

Before WEICK and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

Severance Specialty, Inc. [Severance] appealed from a judgment entered upon

a jury verdict in the District Court awarding $40,000 to plaintiff, Judy Hruska, in her action for malicious prosecution.

Severance was responsible for having the plaintiff prosecuted for shoplifting. After her acquittal of charges of larceny in the state court, she filed suit against Severance in the District Court to recover $250,000 damages.

Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. Mrs. Hruska was a resident of Florida when she filed the suit, and Severance was an Ohio corporation. The case is governed by Ohio law.

On May 2, 1971 Mrs. Hruska was in a retail dress store operated by defendant in Severance Center at the Westgate Shopping Center in Fairview Park, a suburb of Cleveland, Ohio. The name of this particular store was "William Kitt". Plaintiff was accompanied by her son, then five years of age.

Plaintiff had driven to the shopping center in her automobile and was having some mechanical work done on the car while she shopped. She testified that before entering defendant's store she had gone to Kresge's and purchased a pair of mittens for her son. She testified that she placed these mittens in a Higbee's shopping bag which was an ordinary white paper shopping bag with pink and red flowers on it. After leaving Kresge's store plaintiff and her son spent a few minutes in a pet shop before entering defendant's store.

While in the Severance store plaintiff was looking at dresses in one area of the store while her son was seated on a chair in another nearby area, with her shopping bag and purse on the chair beside him.

As plaintiff and her son were leaving the store, a sensomatic device was activated. This is an electronic device which activates a warning system when that device is being carried out of the store. The store had placed this device on all items of merchandise; this device would be removed from the merchandise by the sales clerk only when the item was purchased.

When the sensomatic device was activated the store manager, Robert Gould, was notified immediately and he confronted plaintiff. He asked if she had a device on her person, and she replied that she did not think so. With her permission Gould looked in her shopping bag and found a size 10 multicolored dress with jeweled belt, which retailed for $130; the dress had not been purchased, and had thereon the sensomatic device which activated the warning system. He found nothing else in the bag.[1]

The store manager asked plaintiff to go to the back of the store with him; she complied with his request, taking her son with her. Gould immediately called the Fairview Park police station; a policeman responded, and took Mrs. Hruska to the station for questioning. Gould did not interrogate Mrs. Hruska additionally about the incident before he called the police.

During the interrogation by the police at the police station plaintiff spelled her name "Ruska," and gave them "phony addresses" instead of her correct address. The police asked for her driver's license or for other identification, and she told them that she did not have a driver's license with her; and that she had gone to the shopping center on the bus. She later told the police the truth.[2]

---

1. Plaintiff testified that she did not notice any difference in the weight of the bag containing only the dress than when it contained only one pair of boy's mittens. She also testified that the stolen dress was neither her size nor her style.

2. Plaintiff testified on direct examination as follows:

Q. All right. When was it that you told him [the policeman] your real name and that you had a driver's license and that you came in a car and why you had told these lies?

A. Well, when I got to the police station they separated me from my son. They took him into another room and I was in

Her explanation for these initial false statements was that she was "shook up" since she had never before been in such a situation. She also said that she told the police of the circumstances involving her divorce, custody of her children, and "the various factors that led me at that particular moment to distort the truth." (App. p. 27). Plaintiff was released on a $500 personal bond.

The store manager Gould signed an affidavit charging the plaintiff with larceny, which affidavit was filed in Rocky River Municipal Court, where a preliminary hearing was conducted.

At the hearing the Municipal Judge heard witnesses offered by the prosecution and also by Mrs. Hruska who was represented by counsel. At the conclusion of the hearing the Municipal Judge found probable cause and bound Mrs. Hruska over to the Grand Jury of Cuyahoga County, which indicted her for larceny of the dress. In a trial before a Judge without a jury she was acquitted.

Attorney Charles Clarke, who represented Mrs. Hruska in connection with the criminal proceedings against her, contacted Edgar Bruml, President of Severance, in an effort to persuade him to drop the charges against her while the case was pending in the Municipal Court. Mr. Clarke requested Mr. Bruml to advise him the name of the company's attorney so that he might discuss the case with him. Mr. Bruml informed Mr. Clarke that his company was represented by Albert Borowitz. Mr. Clarke then telephoned Mr. Borowitz, who testified in part as to the conversation as follows:

A ·After introducing himself—and by the way, I did not know Mr. Clarke before that call—he told me that he represented Mrs. Hruska, that she had been apprehended at the Westgate Shopping Center, that she had been accused of tak-

ing a dress which retailed at about $130, that the store manager who had spoken to the police in connection with the apprehension was Mr. Gould, that the case was before the Rocky River Municipal Court.

He hold me that he had spoken to Mr. Bruml and told Mr. Bruml of his view, that is, Mr. Clarke's view that Mrs. Hruska had been apprehended in error, and that he had asked Mr. Bruml whether he would give Mr. Clarke the name of his lawyer so that Mr. Clarke could contact Mr. Bruml's lawyer.

Mr. Bruml agreed. Mr. Clarke called me, and the substance of his message, other than introducing me to the facts of the case, was to suggest and request that I talk to Mr. Bruml, that I look into the facts, and that I advise my client, in light of what I found the facts were.

Q Well, following that telephone call from Mr. Clarke, what did you do?

A I consulted one of my partners, Harry Nester, who is a trial lawyer, as I am not. And I gave him this slip on which I sketched these few words from Mr. Clarke.

I explained what the substance of the call was, and I asked him to contact the staff of Severance Specialty to make inquiry into the incident.

Q Did you have any further contact with this entire incident?

A Yes. Mr. Nester, after making his calls, consulted with me again, and it was our joint conclusion that the client had proceeded in the matter in good faith, that it had a reasonable basis for having

---

front of two men, I believe, possibly even a third, the police officer. And they even made me sign a statement, and suddenly one man came back in and he said, "You're a liar. You live at 1057 Park-

side." He said, "Little children don't tell lies." In other words, he had been in the other room talking to my boy. (App. p. 26).

had a warrant sworn out, and that there was no legal basis to advise the client to interfere with the course of the prosecution. (Tr. pp. 345–347).

Mr. Clarke called Mr. Borowitz again after his client had been indicted by the Grand Jury. Mr. Borowitz testified:

About three months went by at this stage of the matter without it coming to my attention again, until I find again, from my records which I have here, on June 15, 1971, when Mr. Clarke called me again.

Mr. Clarke now told me that Mrs Hruska had been indicted and that he, Mr. Clarke, had spoken to Mr. Hy Freidman in the prosecutor's office to see what Mr. Freidman's attitude toward the case was. He quoted Mr. Freidman as having said that he was not happy about the case and as indicating to Mr. Clarke if Severance Specialty would concur, that he would not be unhappy to see the case dropped.

The purpose of Mr. Clarke's call was to ask me whether I would refer that message on to Mr. Bruml. But in connection with giving me that message, he now stated to me, for the first time in detail, what conclusions he had reached from his investigation of his client's matter. And he identified Mrs. Hruska as the daughter, I believe the gentleman's name is Jay Ehle of Cleveland Builder Supply.

He told me that she was the daughter-in-law of Senator Hruska and that she was in the process of obtaining a divorce.

He told me, in response to my questions, that he had not found any evidence of kleptomania in this picture, but that he felt that Mrs. Hruska was confused at the time of the incident, possibly as a result of her concern over the divorce proceedings.

He then outlined for me what his defense would be, and as I understood his message, it was that a shopping bag of Mrs. Hruska had been switched by a professional shoplifter. He gave me his evidentiary findings in support of that position, which I carefully noted.

He then went on to ask me to advise Mr. Bruml that the case would be vigorously defended, and if there was an acquittal, a case for false arrest and malicious prosecution would be filed against Mr. Bruml's store.

Now, my response to this, after hearing a statement of the position of Mr. Clarke's client, was to tell him my understanding of our client's position. I didn't know Mrs. Hruska and I didn't think he knew Severance Specialty.

So I explained to him that Severance Specialty was a specialty shop that was not in the same size league as Halle's and Higbee's, that it had to be extremely concerned about inventory losses and, therefore, its policy was that where circumstances indicated a possible shoplifting, the police would be called, the matter would be turned over to the police, and if the circumstances were appropriate, a warrant would be sworn out and the store personnel would thereafter cooperate with the prosecution of the matter. (Tr. pp. 347–349).

Mr. Borowitz did relay Mr. Clarke's message to Mr. Bruml.

Mr. Clarke testified by deposition as to what the son told him about some lady "messing" with his mother's shopping bag.[3] Mrs. Hruska testified as to

---

3. The District Court sustained an objection to this conversation on the ground that it was hearsay evidence. However, it was later admitted, over the objection of defendant.

what her son told her to the same effect. No objection was made to the testimony of Mrs. Hruska on the ground that it was hearsay evidence.

In appellee's brief there appears the following statement:

Young Quentin [plaintiff's son] testified at both the criminal trial and in the case at bar that some lady "messed" with his mother's shopping bag while she was looking at dresses and the bag was next to him (App. Vol. I., pp. 108-110). (Brief, p. 13).

The cited record reference contains the testimony of young Quentin, which testimony does not support the citation. However, the District Judge, after voir dire examination, observed Quentin to be "a very articulate young man" whose "memory and recollection of what occurred on the day in question is very fine." (App. Vol. I, p. 109).

The trouble is that young Quentin did not testify in the District Court that some lady "messed" with his mother's shopping bag. His testimony was as follows:

Q. They were already there. Did you see anybody near the bag?

A. Yes. A lady came and she said, "Hi little guy."

Q. "Hi little guy." A lady. All right. What did she look like?

A. She had freckles on her.

Q. She had freckles. Do you know what kind of hair she had.

A. Black.

Q. Black hair. And where did she go?

A. In back of the chair.

Q. In back of the chair. And then did you—what were you doing when you were sitting in the chair?

A. I was watching my mom's stuff. (App. p. 112).

This was a very important matter. It is not understandable why the son was not interrogated as to what, if anything, the lady did with his mother's shopping bag.

In her statement to the police, in reporting what her son had told her, Mrs. Hruska did not use the words "messed with", but stated that she asked her son if he had put the dress there and he said that an unknown female had put it in the bag and then left the store.

Appellant's principal contention on appeal is that plaintiff failed to establish a lack of probable cause which is an essential showing to maintain successfully an action for malicious prosecution. Appellant argues that the Court erred in not granting its motion for a directed verdict.

The essential elements of a malicious prosecution were stated by the Supreme Court of Ohio in the first syllabus of Rogers v. Barbera, 170 Ohio St. 241, 164 N.E.2d 162 (1960):

The essential elements of a malicious prosecution are (1) malice in instituting or continuing the prosecution (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant. (Paragraph two of the syllabus of Davis v. Tunison, 168 Ohio St. 471, 155 N.E.2d 904, modified.) (Syl. 1)

As to probable cause, the Court stated:

An almost classic definition of probable cause, as it pertains to a malicious prosecution action, was adopted

in a conversation between Clarke and Bruml testified to by Clarke.

There was no proof that a professional shoplifter had switched shopping bags with Mrs. Hruska, or that such shoplifter had put the stolen dress in Mrs. Hruska's shopping bag, as she told the police and as contained in the police report.

Certainly it would take a most heartless thief to plant a stolen dress in the shopping bag of an innconet lady while that lady's bag was being watched by her son, and then steal the son's mittens. The District Court found that the son was a very articulate young man with a very fine memory, and the son testified to no such occurrence. All the thief had to do, if she decided not to consummate the theft, was to leave the dress in the store where she had found it.

by this court, as follows, in Ash v. Marlow, 20 Ohio 119:

"What, then, is the meaning of the term 'probable cause'? We answer, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." (170 Ohio St., at 246, 164 N.E.2d, at 166).

See also Melanowski v. Judy, 102 Ohio St. 153, 131 N.E. 360 (1921).

Appellee contends that store manager Gould did not act as a cautious man in that he made no real investigation before calling the police and signing the warrant. Appellee further contends that a cautious person would have made such an inquiry, and that there were facts tending to indicate Mrs. Hruska's innocence which would have put a cautious person on notice that Mrs. Hruska might well be innocent.

In *Ash, supra*, the Supreme Court of Ohio held:

"Probable cause" is a mixed question of law and fact; and if the facts are contested, the court must leave them to the jury with instructions as to what is "probable cause." (20 Ohio at 130).

This rule has been followed by Ohio Appellate Courts. In Etter v. Mullett, 40 Ohio App. 222, 178 N.E. 279 (Stark Co. 1931), it was held:

The main and only question of importance in the case in the court below, and in the error proceedings now before this court, is whether or not the defendant had reasonable and probable cause for the institution of the proceedings; this being purely a question of fact to be determined by a jury under proper instructions from the court. (*Id*. at 222–223, at 279 of 178 N.E.).

In Burke v. Kearney, 51 Ohio App. 287, 200 N.E. 649 (Hamilton Co. 1935), the Court held:

. . . [U]nder the law laid down in those cases [*Ash, supra*, and oth-

ers] want of probable cause is an issue of fact to be determined by the jury, like any other issue of fact . . . . (*Id*. at 293, at 652 of 200 N.E.).

Thus, the rule in Ohio is that where the facts are disputed, the determination of want of probable cause is for the jury. The Court may direct a verdict on this issue where reasonable minds can reach but one conclusion.

In Rogers v. Barbera, *supra*, the Supreme Court of Ohio reversed a judgment in favor of the plaintiff in a malicious prosecution action against a police officer who had signed an affidavit for a warrant for the arrest of the plaintiff on a charge of armed robbery. In signing the affidavit for the warrant the officer had relied on three disinterested witnesses who had identified the plaintiff as the robber at a police lineup. The Court held that probable cause was established as a matter of law. To the same effect is Kinter v. Cheeks, 71 Ohio App. 333, 49 N.E.2d 962 (Cuyahoga Co. 1942).

In Sessoms v. Union Sav. & Trust Co., 338 F.2d 752 (6th Cir. 1964), cert. denied, 382 U.S. 821, 86 S.Ct. 49, 15 L.Ed. 2d 67 (1965), we held that the defendant in a malicious prosecution action had the right to put in issue the guilt of the plaintiff even though plaintiff had been acquitted of the criminal charge.

We hold that the defendant had probable cause to detain the plaintiff and to call the police when plaintiff activated the sensomatic device as she was walking out of the store with the stolen dress in her shopping bag. Taking this into account and the false answers which she gave to the police, the store manager had probable cause to execute an affidavit for a warrant charging her with larceny of the dress. We must determine, however, whether under the facts of this case the defendant had probable cause to continue the prosecution in the state court.

In considering this issue we are not helped by the fact that counsel did not at the trial address any questions to

plaintiff's son to elicit the claim that some lady "messed with" his mother's shopping bag.

 Under Ohio law it is clear that the binding over of a defendant to a grand jury by a Court establishes prima facie evidence of probable cause. C. F. Adams Co. v. Robertson, 16 Ohio C.C.R. (n.s.) 278 (Cuyahoga Co. 1908), aff'd, 82 Ohio St. 400, 92 N.E. 1110 (1910); Neff v. Palmer, 78 Ohio L.Abs. 34, 152 N.E.2d 719 (C.P.C. Fayette Co. 1956), aff'd, 78 Ohio L.Abs. 58, 151 N.E.2d 380 (Fayette App.Ct.1956).

 Similarly, indictment by a grand jury establishes prima facie evidence of probable cause. Cincinnati, H. & D. R. R. v. Winnes, 25 Ohio C.C.R. (n.s.) 321 (Hamilton App.Ct.1916).

In addition to the foregoing, the conversation between plaintiff's attorney Clarke and defendant's attorney Borowitz must be considered. Mr. Clarke certainly informed Mr. Borowitz of all of the facts of which he had knowledge in order to persuade Mr. Borowitz to advise his client to drop the prosecution. Mr. Borowitz was of the opinion that his client "had a reasonable basis for having had a warrant sworn out, and that there was no legal basis to advise the client to interfere with the course of the prosecution." Mr. Borowitz doubtless was influenced by the fact that Mrs. Hruska was detained as she was leaving the store with a stolen dress in her shopping bag, and that she had lied to the police.

Under all the circumstances we are of the opinion that probable cause was established as a matter of law, and that the District Court erred in not directing a verdict in favor of the defendant. Rogers v. Barbera, *supra*.

Appellant further assigns as error the refusal of the Court to give to the jury certain special instructions, the Court's instructions given to the jury, and certain comments made by the Court on the evidence, which comments appellant claims destroyed the credibility of the store manager Gould as a witness. In view of our disposition of this case, it is not necessary for us to pass upon these other issues.

The judgment of the District Court is reversed, and the cause is remanded with instructions to dismiss the complaint.