Commonwealth *v.* Harris, Appellant.

Argued September 13, 1965; reargued September 14, 1966. Before WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (ERVIN, P. J., absent).

*Leonard Packel,* Assistant Defender, with him *Melvin Dildine,* Assistant Defender, and *Herman I. Pollock,* Defender, for appellant.

*Alan J. Davis,* Assistant District Attorney, with him *Edwin D. Wolf,* Assistant District Attorney, *Richard*

*A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., November 17, 1966:

Melvin Harris was indicted in the Court of Quarter Sessions of Philadelphia County on Bills Nos. 279, 280, 281, and 282 July Sessions 1964. Bill No. 279 charged burglary at 1718 Sansom Street, larceny of personal property of Anna DeBellis, and receiving stolen goods. Bill No. 280 charged unlawful possession of burglary tools. Bill No. 281 charged burglary at 237 South 60th Street, larceny of personal property of Mary Grimes, and receiving stolen goods. Bill No. 282 charged burglary at 6027 Vine Street, larceny of personal property of George Price, and receiving stolen goods. Harris entered a plea of not guilty and was tried with counsel before Honorable ROBERT W. TREMBATH, specially presiding, and a jury. A demurrer was sustained on Bill No. 281. The jury returned verdicts of guilty on Bills Nos. 279, 280, and 282. A motion for a new trial was duly filed and overruled. Concurrent sentences of two to four years were imposed on Bills Nos. 279 and 282. Sentence was suspended on Bill No. 280. The Superior Court allowed appeals on Bills Nos. 279 and 282 in forma pauperis, and directed that counsel be appointed to argue the appeals. Following argument on September 13, 1965, a per curiam order was entered on October 15, 1965, affirming the judgments of sentence. See *Commonwealth v. Harris,* 206 Pa. Superior Ct. 743, 213 A. 2d 390. On January 18, 1966, Harris belatedly requested allocatur. On July 26, 1966, the Supreme Court granted this request and remanded the record to the Superior Court.[1] On September 14, 1966, in com-

_____

[1] "In view of this Court's decision in Commonwealth v. Ellsworth, 421 Pa. 169, 218 A. 2d 249 (1966), the requested allocatur

pliance with the order of the Supreme Court, reargument was heard.

We will briefly summarize the relevant portions of the original trial record. Anna DeBellis testified that she was the proprietor of a boutique shop at 1718 Sansom Street, dealing in wigs. A burglary occurred at this shop during the night of May 29, 1964, and "there wasn't a thing left". Mrs. DeBellis identified Melvin Harris as a stranger who had been in her shop on the afternoon of May 13, 1964. He was carrying a tan brief case, Commonwealth Exhibit 3, and had paid particular attention to the lock on the front door through which the burglar entered. Mrs. DeBellis identified Commonwealth Exhibit 3, also three wigs marked Commonwealth Exhibits 1, 2, and 5. George Price testified that he was a manufacturer of wigs at 6027 Vine Street, that his shop had been entered at the rear during the night of May 27, 1964, and every wig taken. In particular he identified Commonwealth Exhibit 4, which was an unusual wig made for an entertainer whose head had been burned. Laura Chester testified that she was the proprietor of a beauty shop and sold wigs. She stated that the wigs in question had been brought to her shop on June 13, 1964 by Mrs. Lillie Wilson. Mrs. Lillie Wilson testified as to the receipt of wigs from Harris.

Detective Bernard Small testified that, on June 16, 1964, he arrested Harris at the residence of Mrs. Wilson. "He walked in, and I arrested him . . . I asked him where his car was parked. He indicated. I went to his car, and in his presence I searched the automobile". When the detective was asked about the result of the search, counsel for Harris moved to suppress the

is granted; the judgment of the Superior Court is vacated and the record remanded to the Superior Court for the purpose of rehearing argument to determine the merits of appellant's contention in light of Ellsworth".

evidence on the ground that the search had been conducted without a warrant. The trial judge ultimately overruled this motion. Small then testified that Harris "voluntarily gave me his keys", and that he found the brief case, Commonwealth Exhibit 3, in the trunk of the car. The brief case contained two pairs of work gloves, two heavy duty screwdrivers, one small screwdriver, two knives with six-inch blades, and two flashlights. Harris told the detective that "the briefcase and the tools were his". The detective testified at length relative to the physical characteristics at the scenes of the burglaries. At 1718 Sansom Street the entrance was made by breaking the front door. Paint scrapings, Commonwealth Exhibit 7, were obtained from the door. At 6027 Vine Street a rear window had been forced. Paint samples, Commonwealth Exhibit 8, were obtained, also brick dust, Commonwealth Exhibit 9, from a chipped brick found below the window. The police laboratory technician gave fascinating and convincing testimony connecting the contents of the brief case with the respective burglaries.

Melvin Harris took the stand on his own behalf. He testified that he had bought Commonwealth Exhibits 1 and 2 in New York City, from a man named Hancock, and that he had given only those two wigs to Lillie Wilson. He stated that, when Lillie Wilson confronted him in the police station, she mentioned only those two wigs. He denied ownership of the tools, stating that he had borrowed the car from a friend. He denied having any knowledge of the burglaries. The detective testified in rebuttal that, at the confrontation in the police station, Mrs. Wilson stated in the presence of Harris that he had given four wigs to her, including Commonwealth Exhibits 4 and 5. Harris then said, "Yes, I gave her the wigs".

Appellant does not contend that his arrest was unlawful. At the time of the arrest and search, the de-

tective knew that burglaries had taken place at the De-Bellis and Price establishments, and that a quantity of wigs had been stolen in each burglary. Several of these wigs had been found by police officers in the possession of Laura Chester, who stated that she had obtained them from Lillie Wilson, who in turn informed the officers that she had obtained these wigs from Melvin Harris. On the basis of such information a reasonably cautious person would have believed, as did the detective immediately before the arrest, that Harris had participated in the burglaries. Therefore, his arrest without a warrant was based on probable cause.

Appellant does question the legality of the search of the car. He contends that it "was neither substantially contemporaneous with the arrest nor confined to the immediate vicinity of the arrest", as required by *Commonwealth v. Ellsworth*, supra, 421 Pa. 169, 218 A. 2d 249. It is the Commonwealth's contention that the search and seizure was incident to a lawful arrest, and therefore reasonable under the *Ellsworth* case and the Fourth Amendment to the Constitution of the United States. This is the sole issue now presented for our consideration.[2]

The factual situation in the *Ellsworth* case differs materially from that in the case at bar. Ellsworth had been arrested without a warrant by an officer whose initial search consisted only of a "patting" of the clothes. Upon arrival at the police station, within five minutes of the arrest, the officer searched Ellsworth's pockets and removed the contents, including the key to a hotel room. More than two hours later, and without

---

[2] We do not discuss two other issues raised at the original argument. It was there contended by the Commonwealth that Harris had consented to the search. It was also argued that the motion to suppress the evidence had not been timely made under Pa. Crim. R. No. 2001. Cf. *Commonwealth ex rel. Cully v. Myers*, 422 Pa. 561, 222 A. 2d 910.

a warrant, a search was made of this hotel room at a distance of eight miles from the police station. Our Supreme Court held that the initial "patting" at the time of the arrest and the subsequent search of the person at the police station were valid, but that the search of the hotel room was neither contemporaneous in time with the arrest, nor sufficiently adjacent to the scene of the arrest. We are firmly of the opinion that the search in the instant case in no way contravenes the ruling in the *Ellsworth* case, and that it was entirely valid under both state and federal decisions.

A search which is incident to a lawful arrest is valid and reasonable even though conducted without a search warrant: *Commonwealth ex rel. Whiting v. Rundle*, 414 Pa. 17, 198 A. 2d 568. Appellant relies primarily on *Preston v. United States*, 376 U. S. 364, 84 S. Ct. 881. That case involved the search of a motor vehicle. The defendant was placed under arrest and taken to the police station. His car was towed to the police garage where the search was made. It was held that this search was too remote in time and place to have been incidental to the arrest. The court said (italics supplied) : "Once an accused is under arrest and in custody, then a search made *at another place*, without a warrant, is simply not incident to the arrest". In the case at bar, the search and seizure were attendant parts of the arrest itself. They "flowed naturally from and were part and parcel of the normal and logical consequences of the arrest": *Commonwealth v. Cockfield*, 411 Pa. 71, 190 A. 2d 898, cert. denied, 375 U. S. 920, 84 S. Ct. 265. Cf. *Commonwealth v. Aljoe*, 420 Pa. 198, 216 A. 2d 50.

In *United States v. Rabinowitz*, 339 U. S. 56, 70 S. Ct. 430, the relevant test was said to be "not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the to-

tal atmosphere of the case". Appellant was arrested as he entered the Wilson home. He pointed out a 1963 Pontiac convertible which was parked outside the residence "almost directly in front of the house". Appellant gave detective Small the keys to this car and Small, in appellant's presence, then conducted the search. We are of the opinion that this search is not comparable to the search which was held invalid in the *Ellsworth* case. That search was of a hotel room eight miles distant from the scene of the arrest and over two hours thereafter.

It should be noted that the second search in the *Ellsworth* case was held to be valid. That search was conducted five minutes after the arrest at a police station two blocks distant. In the instant case the search took place immediately after the arrest and in front of the dwelling in which the arrest had been made. Moreover, the search involved a motor vehicle. It has been consistently held that, although not unlimited, the right to search an automobile may not be equated with the search of a nonmovable structure: *Commonwealth v. Katz*, 202 Pa. Superior Ct. 629, 198 A. 2d 883. See also *Commonwealth v. Scull*, 200 Pa. Superior Ct. 122, 186 A. 2d 854, cert. denied, 376 U. S. 928, 84 S. Ct. 670. "Common sense dictates, of course, that questions involving searches of motorcars or other things readily moved cannot be treated as identical to questions arising out of searches of fixed structures like houses": *Preston v. United States, supra,* 376 U. S. 364, 84 S. Ct. 881.

The Fourth Amendment prohibits only unreasonable searches and seizures: *Commonwealth ex rel. Bowers v. Rundle,* 200 Pa. Superior Ct. 496, 189 A. 2d 910, allocatur refused, 200 Pa. Superior Ct. xxx, cert. denied, 375 U. S. 916, 84 S. Ct. 215. The pivotal issue therefore is the reasonableness of the police action. Officers of the law need only act reasonably under the

totality of the facts in the particular case. Where an arrest is lawful and the search is contemporaneous therewith, it is incident to the arrest and therefore reasonable. Cf. *Crawford v. Bannan,* 336 F. 2d 505, cert. denied, 381 U. S. 955, 85A S. Ct. 1807; *Adams v. U. S.,* 336 F. 2d 752, cert. denied, 379 U. S. 977, 85 S. Ct. 676. The search of the car in the instant case was contemporaneous with the operator's lawful arrest and in the immediate vicinity thereof. There was proximity both of time and place. We adhere to our original view that this search was reasonable and valid.

Judgments affirmed.

--------

DISSENTING OPINION BY HOFFMAN, J.:

I dissent.

The search of defendant's car without a warrant cannot be justified as incident to his arrest. Contemporaneous searches are permitted because of the ". . . need to seize weapons and other things which might be used to assault an officer or effect an escape . . . [and] the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." *Preston v. U. S.,* 376 U. S. 364, 367 (1964). None of these considerations was operative here.

Defendant was arrested inside the Wilson home. He immediately surrendered his car keys to the police. At this point, there was no possibility that his car would be moved or that evidence in it might be destroyed. Moreover, with the defendant in handcuffs and two officers on the scene, there was no danger from weapons concealed in the automobile. The status quo with respect to the car could easily have been maintained until a search warrant was issued.

In *Conti v. Morgenthau,* 232 F. Supp. 1004 (S.D. N.Y. 1964), the court was confronted with a nearly

identical situation. Conti was arrested in an apartment and charged with gambling without a federal license. Immediately after the arrest, police officers searched his car, which was parked near the premises. The court held the evidence thus obtained inadmissible.

"The government cannot and does not justify the search as an incident of Conti's arrest since the arrest was not contemporaneous with or in the vicinity of his car which was parked around the corner from the apartment. Moreover, with Conti already under arrest and the agents in possession of his keys to the locked car, there was no danger of movement of the car or loss of the evidence." Id. at 1008.

The majority suggests that the search in the instant case was within the limits of reasonableness established in *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A. 2d 249 (1966). It is true that the *Ellsworth* Court approved a search of the accused made five minutes after his arrest, at a police station two blocks distant. However, the Court was careful to point out that this search was required ". . . to ascertain exactly what, if any, weapons [the defendant] might have on his person." (p. 182). In *James v. Louisiana*, 382 U. S. 36 (1965), where no such necessity was apparent, a search conducted two blocks from the scene of an arrest and a few minutes thereafter was held constitutionally impermissible. Clearly, a rough proximity to the arrest in time and place is not the sole test of reasonableness in these cases.

On the record before us, therefore, the search of defendant's car cannot be justified as an incident of his arrest. Consequently, the evidence obtained as a result of the search should have been suppressed.

I would reverse and grant a new trial.