## Commonwealth, Appellant, *v.* Geiger.

Argued June 14, 1966. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, and SPAULDING, JJ. (JACOBS and HOFFMAN, JJ., absent).

*Ward F. Clark,* District Attorney, for Commonwealth, appellant.

*Frederick E. Smith,* with him *Ross, Smith & Renninger,* for appellee.

OPINION BY WRIGHT, J., March 23, 1967:

On April 1, 1963, before a justice of the peace in Bucks County, a complaint was filed by a representative of the Narcotics Division of the Pennsylvania Department of Health charging that Frederick William Geiger unlawfully possessed dangerous drugs in violation of Section 4(q) of The Drug, Device and Cosmetic

Act of September 26, 1961, P. L. 1664, 35 P.S. 780-4(q).
Following a hearing on June 21, 1963, Geiger was held
under bail for action by the grand jury. On July 2,
1963, he filed in the court of quarter sessions a petition
to suppress certain evidence which he alleged had been
improperly seized as the result of an unlawful search
of his person. After hearing testimony, the court be-
low, on December 30, 1965, granted Geiger's petition
and ordered that the evidence in question should not
be used. The Commonwealth has appealed.[1]

The search and seizure here under consideration oc-
curred following Geiger's arrest for the unlawful pos-
session of narcotics. The court below concluded "that
probable cause for the arrest of the defendant has not
been established". It is the theory of the Common-
wealth to the contrary that Geiger's arrest was based
on probable cause, and that the seizure of the evidence
in question was valid as an incident to the lawful ar-
rest. The controlling issue before us therefore is wheth-
er the arresting officers had probable cause to make the
arrest. Our review of the record, hereinafter sum-
marized, leads us to conclude that there was probable
cause for the arrest, wherefore the order of the court
below will be reversed.

On February 1, 1963, William D. Brooke, Chief of
Police of New Hope Borough, received a letter from a
District Supervisor of the Bureau of Narcotics of the
United States Treasury Department naming Frederick
W. Geiger as a suspected user of narcotics. Chief
Brooke contacted Renato Della Porta, Assistant State
Supervisor of the Narcotics Division of the Pennsylva-
nia Department of Health. A check was made of drug-
stores in the area for the reason that, as Della Porta

---

[1] The Commonwealth has the right to appeal from a pretrial
order suppressing evidence where it appears that it will be sub-
stantially handicapped in the prosecution of the case: *Common-
wealth v. Fisher*, 422 Pa. 134, 221 A. 2d 115.

testified, "we have learned over the years that people who use narcotic drugs will resort to the use of exempt narcotic preparations when they are filling in between. They will use things such as paregoric, such as elixir terpin hydrate and other exempt narcotic preparations". This check revealed that Geiger had purchased quantities of paregoric, and elixir terpin hydrate with codeine.

On or about March 20, 1963, Della Porta received word from an informant that Geiger was going to New York to pick up narcotics, and that he had left his motor vehicle at the home of Joseph J. Paulovic. This informant had been previously established as a reliable source.[2] The Paulovic home was then placed under surveillance. The Geiger car was parked there. On April 1, 1963, Della Porta received word from the informant that Geiger would return from New York that evening. A warrant was obtained to search the Paulovic residence in the event that Geiger would attempt to dispose of the drugs in the house. As the officers approached the Paulovic home, they observed Geiger sitting on a chair in the living room. The officers then entered, read the search warrant and placed Geiger under arrest for possession of narcotic drugs. Geiger was taken to the Solebury Township Building where a request was made that he empty his pockets. The contents of the pockets included barbiturate tranquilizer pills and a partially filled bottle of chloral hydrate. Both are dangerous drugs within the meaning of the statute.

Police officers may make an arrest without a warrant where there is probable cause to believe that the person arrested has committed a felony: *Commonwealth v. Richards,* 198 Pa. Superior Ct. 39, 182 A. 2d 291.

---

[2] The reliability of this informant was confirmed by the developments in the instant case.

Probable cause exists where the facts and circumstances within the knowledge of the arresting officer and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed; moreover, the quantity of information which constitutes probable cause must be measured by the facts of the particular case: *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A. 2d 249. A search which is incident to a lawful arrest is valid if reasonable even though conducted without a search warrant, and the governing criterion is the total atmosphere of the case: *Commonwealth v. Harris*, 209 Pa. Superior Ct. 27, 223 A. 2d 881. Briefly stated, and as previously indicated, it is our conclusion that the officers acted reasonably under the totality of the facts in the instant case.

The lower court suggested that the arresting officers did not genuinely believe that they had probable cause for the arrest. We do not so interpret the record. The lower court also expressed doubt as to when the arrest took place, as well as uncertainty whether Geiger was advised that he was being arrested for possession of narcotics. We have no difficulty with this aspect of the case. Della Porta testified unequivocally that, after reading the search warrant in the Paulovic home, he placed Geiger under arrest for the possession of narcotic drugs. The fact that Geiger was arrested on that charge was confirmed by a visitor in the home, by Chief Brooke, by Joseph J. Paulovic, his wife and his son. Geiger himself testified that "Della Porta led me out by the arm". An arrest may be accomplished by any act which indicates an intention to take the person into custody: *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304.

The order of the court below is reversed with a procedendo.

374

DISSENTING OPINION BY SPAULDING, J.:

The sole question presented is whether the arresting officers had probable cause to arrest defendant for possession of dangerous drugs.

On February 1, 1963, William D. Brooke, Chief of Police of New Hope, Pennsylvania, received an unsolicited letter from the Philadelphia office of the United States Treasury Department Bureau of Narcotics, indicating that an Indianapolis narcotics agent had recently interviewed a former resident of New Hope who stated that Frederick William Geiger and others in New Hope were smoking marijuana and were probably using heroin. Brooke and several narcotics agents, including Renato Della Porta, believing that users of narcotics frequently resort to the use of substitute prescription drugs, made inquiries at neighboring drugstores. They learned that defendant had made numerous purchases of drugs, including paregoric and elixir terpin hydrate with codeine.

On March 20, 1963, an unidentified informant stated by telephone that defendant was going to New York, probably for the purpose of obtaining narcotics. The informant indicated that defendant had left his car at the home of friends, Mr. and Mrs. Joseph Paulovic. The home was placed under surveillance and officers observed that the car remained there.

On April 1, Della Porta received a telephone message, also from an unidentified source, that defendant would return from New York that afternoon or evening. Steven Katsiff, a narcotics agent, was sent to observe the Paulovic home and, when defendant arrived, Katsiff called Della Porta. No attempt was made at this time to arrest defendant. Instead, Katsiff left and a warrant was obtained to search the Paulovic residence. Defendant was not mentioned in the search warrant or supporting affidavit.

Brooke, Katsiff, Della Porta, and others proceeded to the Paulovic residence, arriving about 10:00 p.m. They saw defendant seated in the living room with members of the Paulovic family. The officers entered, read the search warrant, and left with defendant without searching the premises. It is uncertain whether he was advised by the officers that he was being arrested for possession of narcotics or was taken into custody for questioning concerning a recent drugstore burglary.

As they left the house, the officers asked permission to search defendant's automobile and he acquiesced. The search disclosed several empty bottles formerly containing paregoric and elixir terpin hydrate with codeine, but no narcotics. Defendant was transported to the Solebury Township building where he was questioned. When ordered to empty his pockets, he produced bottles containing chloral hydrate and tranquilizer pills. Both are "dangerous drugs" under the Drug, Device and Cosmetic Act. No narcotics were found. An information was then sworn charging defendant with unlawful possession of dangerous drugs.

We agree with the court below that it is not clear when the arrest took place. Certainly, if it did not occur until after the discovery of the articles in defendant's possession, the motion to suppress should be granted. If defendant was arrested at the Paulovic home for possession of narcotics, it becomes necessary to determine whether the arrest was lawful.

The Fourth Amendment limits the circumstances under which an arrest without a warrant may be made to offenses committed in the presence of officers or where officers have reasonable and probable cause to believe that the person to be arrested has committed or is committing a felony. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963); *Henry v. U. S.*, 361 U.S. 98, 80 S. Ct. 168 (1959). " 'Probable cause' has been said to exist 'where "the facts and circumstances with-

in [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" ' an offense has been or is being committed and that the person to be arrested has committed or is committing the offense: Henry v. U. S., supra. . . . However, '. . . an arrest with or without a warrant must stand upon firmer ground than mere suspicion . . . though the arresting officer need not have in hand evidence which would suffice to convict. . . .'; Wong Sun v. U. S., 371 U.S. 471, 83 S. Ct. 407 (1963)." *Commonwealth v. Bosurgi,* supra, at 67.

In determining probable cause in the instant case, the court below gave weight to the following facts. The letter from the Treasury Department to Brooke made no reference to the reliability of the informant or that the information received was even current. Although it is undisputed that the purchases at the drugstore were made pursuant to prescription, there is no indication when they were made. The source of the information that defendant would soon leave for New York was not disclosed. There is testimony that Della Porta had previously received information from the same source but the record does not indicate when the previous information was given, how frequently it was reliable, or whether it was similar in nature. The only apparent corroboration of this informant's statement was the presence of defendant's car near the Paulovic home.[1] The informant who reported on April 1 that defendant was returning made no mention of narcotics and, as the officers approached and looked inside the Paulovic

---

[1] Della Porta was asked during a deposition: "So you made no other independent check as to the accuracy of the information?" He replied: "This particular information, that's right, other than the fact that we knew Mr. Geiger was not in the vicinity, and the fact that we knew Mr. Geiger's car was at the Paulovic house."

home, they saw nothing to justify a belief that defendant had narcotics in his possession.

I cannot agree with the majority that the reliability of these informants was previously established or was confirmed by the developments in the instant case. The reliability of informational sources is crucial to a determination of probable cause.

The trial court concluded that the officers did not actually believe they had probable cause and stated this belief was one of the requirements of probable cause "implicit though not usually expressed in the various judicial definitions thereof." Certainly the actual belief of the officers is relevant to the existence of probable cause. In this case, the conduct of the arresting officers negated such belief. When Katsiff reported to Della Porta that defendant had arrived, no attempt was made to arrest him. Instead, Katsiff, on instructions from Della Porta, left the vicinity to assist in obtaining a search warrant, leaving defendant under no surveillance for approximately one hour. This is hardly consistent with the belief that defendant had narcotics in his possession. The conflict in testimony over whether defendant was advised he was under arrest for possession of narcotics or only asked to accompany the officers for questioning in connection with a recent drugstore burglary, strengthens this conclusion.

Furthermore, when asked: "Now, after you got this [search] warrant—by the way, why didn't you swear out a warrant for the arrest of Mr. Geiger?", Della Porta testified: "At this time, a warrant was not sworn out for the arrest of Mr. Geiger because *we felt that it would be necessary to search the home in order to find the drugs that we would be interested in.*" (Emphasis added.) Having no probable cause to arrest at the time the search warrant was issued, the mere observation of defendant chatting with others in the Paulovic living room did not provide it.

I conclude that the court below was justified in finding probable cause was not established and defendant's motion to suppress was properly granted.

I dissent.

MONTGOMERY, J., joins in this dissent.

