## STATE OF CONNECTICUT *v.* WILLIAM PURVIS

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 10—decided November 26, 1968

*Catherine G. Roraback,* for the appellant (defendant).

*Richard P. Sperandeo,* assistant state's attorney, with whom, on the brief, were *George R. Tiernan,* state's attorney, and *David B. Salzman* and *Robert K. Walsh,* assistant state's attorneys, for the appellee (state).

HOUSE, J. The defendant was charged with the crimes of rape and kidnapping. He was tried to the jury, found guilty of both offenses and has taken the present appeal from his conviction.

The state offered evidence from which the jury could properly find that the defendant first came upon the sixteen-year-old victim of his attack when he found her and her escort in a car which was

stuck in mud on a road in Hamden late one evening. He offered the escort a ride into New Haven to get a tow truck. The girl was left in the car with instructions to stay in the car and lock all the doors until they returned. At the outskirts of New Haven, the defendant claimed he was out of gasoline, and the escort left the car to go to a telephone to call some friends to help him get his car out of the mud and pick up the girl. While the escort was telephoning, the defendant drove off, returned to the car where the girl was waiting and tricked her into his car with the story that her escort was waiting for her down the road with a wrecker. The defendant then drove to a country road, where he raped the girl, punching her, knocking her down when she attempted to flee and threatening to kill her with a knife. After again threatening to kill the girl if she told anyone what he had done to her, the defendant drove her back to New Haven. When she reached home she did not tell her elderly and sickly grandparents or her younger brother and sister about the incident but waited up for her mother. She fell asleep, however, and did not tell her mother of the incident until the next day, when she finally was alone with her. They then went to the Bethany state police barracks, where she related the details of the incident to the police. Pursuant to an arrest warrant issued by a judge of the Circuit Court, the defendant was arrested at his home the next day, March 7, 1966. On March 10, the Superior Court issued a bench warrant for the arrest of the defendant on a charge of rape. A second count charging kidnapping was added on March 29. On April 5, the prosecuting attorney of the Circuit Court nolled the charge of rape lodged against the defendant by the information which had been filed in that court on March 7.

This preliminary summary, although brief, suffices as background for a detailed consideration of the assignments of error which the defendant has pressed on this appeal. These involve four main issues: (1) the validity of the seizure and retention of various items of property of the defendant; (2) the exclusion of the general public from the courtroom during the testimony of the complaining witness; (3) the admission into evidence of the testimony of state police officers as to the details of the rape related to them by the complaining witness; and (4) a ruling of the court denying the defendant permission to examine statements of prosecution witnesses, which statements were in possession of the state's attorney. The defendant, with good cause, has expressly abandoned his claim that the court erred in refusing to set aside the verdict as being against the law, as contrary to the evidence, because of errors in the charge and because certain evidence was admitted over his objections.

Before the trial, the defendant filed in the Superior Court a motion for the return of seized property and for the suppression of evidence. The motion was denied, and a finding was filed by the court relative to this aspect of the appeal. This finding discloses that the defendant was arrested at his home at about 5 or 5:30 p.m. on March 7, 1966, under the authority of an arrest warrant issued by a judge of the Circuit Court. There is no claim that the arrest warrant was invalid or that the arrest was illegal. The police officers informed the defendant of his constitutional rights immediately after his arrest and then asked him what clothing he was wearing on the night of March 5. The defendant pointed to a seersucker jacket and also voluntarily handed over a dark sports coat, a black shirt and a

trench coat, all of which the police took into their possession. He did not at that time tell the police that the pants he was wearing were those he had worn on the night of March 5. The finding of the court that these items of clothing were voluntarily handed over by the defendant has not been attacked. After his arrest, the defendant was taken to the state police barracks, arriving about 7 or 7:30 p.m. The finding of the court is that he there voluntarily told an officer that the pants he was then wearing were the same pants he had worn on the night of March 5 and voluntarily gave the pants and his belt to the officer, who supplied him with other trousers to wear.

Of the items of clothing taken by the police, only the dark sports coat, the pants and the belt were introduced as exhibits at the trial, and there was expert testimony that there were seminal stains on the pants and the coat. As we have already noted, the finding of the trial court that the coat was voluntarily turned over to the arresting officers has not been attacked, and, when the pants and the belt were offered as exhibits, the defendant expressly stated that there was no objection to their introduction. There is nothing in the record to suggest that the court's finding as to voluntariness was not completely justified in accordance with all the factors to be considered as particularly detailed in *State* v. *Hanna,* 150 Conn. 457, 470–72, 191 A.2d 124. See also *United States* v. *Thompson,* 356 F.2d 216 (2d Cir.), cert. denied, 384 U.S. 964, 86 S. Ct. 1591, 16 L. Ed. 2d 675.

At the time of the arrest, the defendant's automobile was parked on the street in front of his home, and, in addition to the arrest warrant, the officers had a search warrant authorizing them to

search this car "for the following property—blood-stains, items of clothing, hair and other property belonging to" the victim of the rape. The court found that, as the officers were leaving the defendant's home with the defendant, following his arrest, the defendant voluntarily gave the keys and possession of the car to one of the officers, who took it into his possession. The car fitted the description of the automobile in which the complaining witness had reported the rape occurred and the description of the automobile contained in the affidavit supporting the arrest warrant. A subsequent search of the car, made pursuant to the authority of the search warrant, disclosed strands of long, reddish-brown hair, a jackknife with a strand of long hair attached between the blade and the handle, a black hat and a black necktie. The latter two items were not introduced as exhibits during the trial.

We find nothing in the evidence printed in the appendices to the briefs which supports the court's finding that the defendant voluntarily surrendered the keys to and possession of the automobile, and, if the legality of the taking of the car depended on this claim alone, we would be constrained to uphold the contention of the defendant that the action of the police in taking possession of the car was illegal. It appears, however, that the police had a valid warrant to search and seize the car for the purposes stated in the warrant. As already discussed, other items of the defendant's property were taken either with the voluntary consent of the defendant or as incident to a legal arrest and were therefore legally seized. The court expressly concluded that "[a]ll of the items belonging to the defendant were seized by the police pursuant to a valid search warrant or incidental to his arrest or were voluntarily given to the police by

the defendant." The subordinate facts amply support this conclusion.

The defendant contends that the seizures were unreasonable within the meaning of the fourth and fourteenth amendments to the constitution of the United States and article 1, § 7, of the Connecticut constitution. "The reasonableness of a search is, in the first instance, a determination to be made by the trial court from the facts and circumstances of the case. *Ker* v. *California,* 374 U.S. 23, 33, 83 S. Ct. 1623, 10 L. Ed. 2d 726; *State* v. *Mariano,* 152 Conn. 85, 93, 203 A.2d 305, cert. denied, 380 U.S. 943, 85 S. Ct. 1025, 13 L. Ed. 2d 962." *State* v. *Williams,* 157 Conn. 114, 118, 249 A.2d 245. The legality of the arrest is not disputed, and the seizures were clearly incident to that arrest. A search and seizure to discover and seize the fruits and evidence of a crime and made incident to a lawful arrest is valid. *Preston* v. *United States,* 376 U.S. 364, 367, 84 S. Ct. 881, 11 L. Ed. 2d 777; *United States* v. *Rabinowitz,* 339 U.S. 56, 60, 70 S. Ct. 430, 94 L. Ed. 653; *Harris* v. *United States,* 331 U.S. 145, 150, 67 S. Ct. 1098, 91 L. Ed. 1399; *Marron* v. *United States,* 275 U.S. 192, 199, 48 S. Ct. 74, 72 L. Ed. 231; *Agnello* v. *United States,* 269 U.S. 20, 30, 46 S. Ct. 4, 70 L. Ed. 145; *Weeks* v. *United States,* 232 U.S. 383, 392, 34 S. Ct. 341, 58 L. Ed. 652; *State* v. *Allen,* 155 Conn. 385, 393, 232 A.2d 315; *State* v. *Hassett,* 155 Conn. 225, 232, 230 A.2d 553; *State* v. *Miller,* 152 Conn. 343, 347, 206 A.2d 835. A seizure of the clothing of the person arrested comes within this rule. *United States* v. *Caruso,* 358 F.2d 184, 185 (2d. Cir.), cert. denied, 385 U.S. 862, 87 S. Ct. 116, 17 L. Ed. 2d 88; *Robinson* v. *United States,* 283 F.2d 508, 509 (D.C. Cir.), cert. denied, 364 U.S. 919, 81 S. Ct. 282, 5 L. Ed. 2d 259; *State* v. *Hassett,* supra; *Common-*

*wealth* v. *Aljoe*, 420 Pa. 198, 202, 216 A.2d 50. So does the seizure of his automobile. *United States* v. *Francolino*, 367 F.2d 1013, 1017 (2d Cir.), cert. denied, 386 U.S. 960, 87 S. Ct. 1020, 18 L. Ed. 2d 110; *Commonwealth* v. *Harris*, 209 Pa. Super. 27, 33, 223 A.2d 881. There is no merit to the claim of the defendant that any of the seizures made other than those expressly authorized by the search warrant were illegal, because it was practicable to obtain a warrant also covering them. As the Supreme Court of the United States stated in *United States* v. *Rabinowitz*, supra, 66: "The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case." We find no error in the conclusion of the trial court that the searches and seizures made were reasonable, that the items seized by the police were instrumentalities of the crimes of rape and kidnapping and that they were seized pursuant to a valid search warrant or incidental to the arrest of the defendant or were voluntarily given to the police by him. It follows that the court committed no error in denying the motion of the defendant for the suppression of any evidence which was offered against him on the trial.

The next claim of the defendant is that, since the charge on which the first arrest was based was nolled in the Circuit Court after the Superior Court acquired jurisdiction pursuant to a bench warrant issued by that court, the items seized at the time of the first arrest should be returned to him and suppressed as evidence. The procedure followed in this instance is deeply rooted in the common law. *State* v. *Keena*, 64 Conn. 212, 215, 29 A. 470. As we

said in *State* v. *Stallings,* 154 Conn. 272, 278, 224 A.2d 718, in a similar instance: "The procedure which was followed in this case has been the practice in this state for a great many years and serves the desirable end of expediting the disposition of criminal cases to the mutual benefit of the defendant and the state. *State* v. *Hayes,* 127 Conn. 543, 581, 18 A.2d 895; *State* v. *Chin Lung,* 106 Conn. 701, 720, 139 A. 91. The filing of the original information in the Superior Court was not prohibited by any constitutional provision. *Dillard* v. *Bomar,* 342 F.2d 789 (6th Cir.); *United States ex rel. Cooper* v. *Reincke,* . . . [333 F.2d 608, 611 (2d Cir.)]; *State* v. *Hayes,* supra. The service of the Superior Court bench warrant superseded the Circuit Court mittimus, under which the defendant was being held, and brought him under the jurisdiction of the Superior Court. *State* v. *Chin Lung,* supra." An original information may be filed in the Superior Court in any case in which the Circuit Court may, at its discretion, punish or bind over for trial and in any other case on the order of the Superior Court. General Statutes § 54-42. On March 10, 1966, at the time of the defendant's arrest by virtue of the Superior Court bench warrant, that court acquired jurisdiction of the defendant just as though he had been bound over from the Circuit Court. *State* v. *Stallings,* supra, 279. The subsequent nolle in the Circuit Court of the charges originally pending in that court did not entitle the defendant to the suppression of the evidence lawfully seized at the commencement of the proceedings against him which culminated in his conviction in the Superior Court.

During the trial when the sixteen-year-old complaining witness was called to testify, the state's attorney moved that the courtroom be cleared. The

defendant objected on the ground that such action would deny the defendant his constitutional rights to a free, open and public trial in violation of the sixth and fourteenth amendments to the constitution of the United States and of § 9 of article first of the Connecticut constitution. The court granted the motion and ordered the courtroom cleared of everyone during the girl's testimony except the girl's mother, the mother of the defendant and representatives of the press. The defendant took an exception to the court's ruling and has assigned it as error. The young witness was called upon to testify to all the sordid details of a particularly revolting rape. Under the circumstances, the temporary and limited exclusion of the general public other than representatives of the public press was permissible and did not deny the defendant his right to a "public trial." *State* v. *Gionfriddo,* 154 Conn. 90, 93, 221 A.2d 851. Such a temporary exclusion of the general public is a "frequent and accepted practice when the lurid details of such a crime must be related by a young lady." *Harris* v. *Stephens,* 361 F.2d 888, 891 (8th Cir.), cert. denied, 386 U.S. 964, 87 S. Ct. 1040, 18 L. Ed. 2d 113; see *United States* v. *Geise,* 262 F.2d 151, 155 (9th Cir.), cert. denied, 361 U.S. 842, 80 S. Ct. 94, 4 L. Ed. 2d 80; *Callahan* v. *United States,* 240 F. 683 (9th Cir.).

The remaining assignments of error require but brief comment. The defendant objected and took exception to the testimony of a detective and a policewoman, who, after the complaining witness had testified to the details of the rape, were permitted to testify as to what she had related to them about the incident. The ruling was in accord with the "constancy of accusation" exception to the hearsay rule and with a long line of cases in which that

exception has been recognized. *State* v. *Dziob,* 133 Conn. 167, 169, 48 A.2d 377; *State* v. *Segerberg,* 131 Conn. 546, 549, 41 A.2d 101; *State* v. *Orlando,* 115 Conn. 672, 677, 163 A. 256; *State* v. *Kinney,* 44 Conn. 153, 155; *State* v. *De Wolf,* 8 Conn. 93, 100. The court did not err in its ruling and properly instructed the jury as to the limitations on their use of the evidence and, particularly, that it could be considered only on the charge of rape and not in connection with the charge of kidnapping. See *State* v. *Sebastian,* 81 Conn. 1, 4, 69 A. 1054. It did not err in denying the motion of the defendant for dismissal or for a mistrial on the kidnapping count because of the admission into evidence of this testimony. Nor did it err in its subsequent denial of the defendant's motion to set aside the verdict which was based on the same claim.

The defendant requested that the court order that the state's attorney submit for examination by the defendant any statements in his possession made by state's witnesses who had already testified during the trial. The state handed not only the statements but the entire state police file to the court for an in camera inspection. After its examination of the documents, the court denied the defendant's motion on the ground that there were no contradictions. There is nothing to indicate that the court overlooked any contradictions. "The trial court in the case at bar followed the procedure laid down in our cases, and there was no abuse of discretion. We see no reason for changing our rule." *State* v. *Pikul,* 150 Conn. 195, 202, 187 A.2d 442.

There is no error.

In this opinion the other judges concurred.