Commonwealth, Appellant, *v.* Dussell.

Argued December 13, 1968. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Paul R. Michel,* Assistant District Attorney, with him *Fortunata Giudice* and *James D. Crawford,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*John W. Packel,* Assistant Defender, with him *Walter Lowney* and *Melvin Dildine,* Assistant Defenders, and *Herman I. Pollock,* Defender, for appellees.

OPINION BY WRIGHT, P. J., January 9, 1969:

We are here concerned with appeals by the Commonwealth from orders of the Court of Quarter Sessions of Philadelphia County granting pretrial applications of Jack R. Dussell and Frederick Zemaitaitis to suppress physical evidence and incriminating written statements. The question involved is set forth in

the Commonwealth's brief as follows: "Where police searched the trunk of an automobile immediately after arresting its occupants upon probable cause, was the warrantless search, although contemporaneous in time and place and part of a single transaction with the arrest, nevertheless unlawful merely because police could have safeguarded the evidence from destruction while a search warrant was obtained". The lower court answered this question in the affirmative. We answer it in the negative, and therefore reverse. The factual situation appears in the following excerpt from the opinion below:

"On December 18, 1967, both defendants were passengers in a 1954 Chevrolet when it was stopped by a police patrol wagon for going through a red light. The driver of the car, William Price, was asked by the police officers for the appropriate identification but was unable to produce an owner's registration card. Price explained that the car was not his, but was borrowed from a friend. According to one of the officers present, Officer Daniel Galloway, Price was also unable to remember the friend's name. Contrary to Officer Galloway, defendant Dussell testified that Price was able to remember his friend's name and further advised the officers where the friend could then be found. At this point, Officer Galloway asked Price 'if he would mind opening the trunk . . . in order to identify the owner of the vehicle'. Price complied and inside the trunk Officer Galloway observed stereophonic tapes and a set of golf clubs, irons only, wrapped in cellophane. Officer Galloway remembered that golf clubs had recently been stolen from the Pro Shop at League Island Park. Accordingly, because he concluded that both the golf clubs and the car had been stolen, Officer Galloway took Price and the defendants to the police station.

"As a result of information received from interrogation of defendant Zemaitaitis (at the police station), a search warrant was obtained for Zemaitaitis' residence, where defendant Dussell also resided, although on a temporary basis. The residence was searched and certain property seized. Subsequent to this search, both defendants (while still in police custody) gave statements to the police incriminating themselves in the League Island burglary and several other crimes".

On January 18, 1968, Dussell was indicted at January Sessions 1968, as follows: Bill No. 1504 charged burglary of the motor vehicle of Richard Thompson, 23rd & Packer Avenue, and larceny therefrom of two photo copiers and a brief case. Bill No. 1505 charged burglary of the building occupied by Ryder Truck Rental at 1450 Warfield Street, and larceny therefrom of twenty-four blank checks and a check writer. Bill No. 1506 charged burglary of the building of Edward Kramer, 20th & Pattison Avenue, and larceny therefrom of golf clubs and bags, and a portable television. On the same date, Zemaitaitis was indicted as follows: Bill No. 1507 charged receiving stolen property, namely, two photo copier machines of Richard Thompson. Bill No. 1508 charged receiving stolen property, namely, checks of the Ryder Truck Rental.

In support of its orders granting the applications for suppression, the court below reasoned that "the initial stop was valid", and that the officers had "probable cause to arrest Price and the defendants in the belief that they had stolen the car". However, the court below concluded that the search of the trunk "was not reasonably incident to the arrest", because it "was not necessary to protect the officers, prevent the destruction of evidence or prevent anybody from escaping"; further, that the evidence seized during the residence search should be suppressed because it "was

obtained through the exploitation of prior unlawful police activity", and finally, that "the confessions were 'tainted' by the preceding illegal searches and seizures". Because of the agreement of counsel, stated in appellees' brief and set forth in the footnote,[1] our opinion will be confined to a consideration of the validity of the search of the trunk.

We first note appellees' preliminary arguments that the officers did not have probable cause to make an arrest, and that no arrest was actually made before the search. These contentions did not trouble the court below, nor do we perceive any merit in them. Not all searches and seizures are prohibited, those which are reasonable not being forbidden: *Commonwealth ex rel. Bowers v. Rundle*, 200 Pa. Superior Ct. 496, 189 A. 2d 910. The law is well settled that police officers may make an arrest without a warrant where there is probable cause to believe that the person arrested has committed a felony: *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A. 2d 675. "Probable cause exists where the facts and circumstances within the knowledge of the arresting officer and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed; moreover, the quantity of information which constitutes probable cause must be measured by the facts of the particular case": *Commonwealth v. Geiger*, 209 Pa. Superior Ct. 369, 227 A. 2d 920. An arrest may be accomplished by any act which indicates an intention to take the person into custody: *Commonwealth v. Bosurgi*, 411

---

[1] "There is agreement by and between counsel for appellees and the Commonwealth that Judge JAMIESON's rulings on the suppression of subsequent searches and statements will stand or fall on his ruling concerning the initial search of the automobile trunk which is here discussed".

Pa. 56, 190 A. 2d 304. In the instant case, the officers had ample grounds to believe that the car had been stolen, and their actions clearly indicated an intention to take appellees into custody.

We come now to appellees' main argument, which is thus stated: Assuming that appellees were arrested and that the arrest was valid, "the search of the automobile's trunk was beyond the permissible scope of a search incident to a valid arrest". In support of this proposition they cite *Commonwealth v. Harris*, 429 Pa. 215, 239 A. 2d 290.[2] In that case, the arresting officers were waiting in the dwelling of one of Harris' friends. Harris drove up in an automobile which he parked in front of his friend's residence. When he entered the house, he was placed under arrest. The officers then proceeded to the automobile, searched it in the presence of Harris, and found burglary tools therein. Our Supreme Court, citing *Preston v. United States*, 376 U.S. 364, 84 S. Ct. 881, held that the search was invalid because it "was not confined to 'the immediate vicinity of the arrest' ". Appellees, as did the court below, largely rely on the following statement in the opinion: "These circumstances just do not support the conclusion that the search was necessary to prevent either harm to the arresting officers, or the escape of Harris or the destruction of evidence". Reading the opinion as a whole, we do not believe that it was intended to announce a general rule limiting the right of search at the time and place of arrest.

In the *Preston* case, the search of the automobile was not made until after the defendants had been taken into custody and the car had been towed to a garage. This search was held to be invalid because it "was too remote in time or place to have been made as incidental

---

[2] Reversing this court in *Commonwealth v. Harris*, 209 Pa. Superior Ct. 27, 223 A. 2d 881.

to the arrest". However, Mr. Justice BLACK made the following statement here pertinent (italics supplied): "Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, *the police had the right to search the car when they first came on the scene*". That neither *Preston* nor *Harris* is to be given the restricted interpretation accorded by the court below, and urged by appellees, is convincingly demonstrated by subsequent decisions.

In *Crawford v. Bannan*, 336 F. 2d 505, certiorari denied, 381 U.S. 955, 85 S. Ct. 1807, Crawford was arrested and removed from the scene in a patrol wagon. The officers then made a search of his car, which search was held to be valid "as incidental to and contemporaneous with the arrest". Discussing the *Preston* case, the court reasoned as follows: "Must, then, Preston be read as holding that any search without a warrant, incident to and substantially contemporaneous with an arrest, is illegal if at the time neither the arresting officers nor the evidence of the crime would be endangered by taking the steps necessary to obtain a search warrant? We do not believe that Preston commands such a holding".

Similarly, in *Adams v. United States*, 336 F. 2d 752, certiorari denied, 379 U.S. 977, 85 S. Ct. 676, a warrantless search of the trunk of defendant's automobile was held to be valid where the search was made at the time and place of arrest. Again discussing the *Preston* case, the court stated: "Preston did hold that a warrantless car search subsequent to an arrest was illegal, but there the search was not an incident to the arrest. It occurred at the police station to which both the parties arrested and the car had been brought . . . We recognize, of course, the logic in appellant's argument. After his arrest there was no danger from unseen

weapons or of evidence disappearing from the locked trunk of the car. The status quo with respect to the trunk could have been maintained until a search warrant was issued, particularly since the car itself was impounded by the police . . . But as far as we are aware, no court has yet held that a car, including its trunk, may not be searched without warrant at the time and place its occupants are placed under lawful arrest. We are not persuaded that we should be the first court to do so".

In *Commonwealth v. Cockfield*, 431 Pa. 639, 246 A. 2d 381, two searches were made of the defendant's car. One occurred some 20 hours before the arrest, and the other more than a day later. Both searches were held to be invalid because neither was "contemporaneous with and confined to the immediate vicinity" of the arrest. However, our Supreme Court reiterated the principle that a search incident to a lawful arrest may extend to things under the accused's immediate control, such as an automobile, providing the search is substantially contemporaneous with the arrest. See also *Commonwealth v. Gordon*, 431 Pa. 512, 246 A. 2d 325.

In brief, we hold that the search of the automobile trunk in the case at bar was valid because it was contemporaneous with a lawful arrest and in the immediate vicinity thereof. There was proximity both of time and place. We expressly rule that danger to the officers or to the evidence is not a prerequisite of an incidental search under either federal or state law.

Orders reversed with a procedendo.

SPAULDING, J., concurs in the result.

JACOBS and HOFFMAN, JJ., would affirm the orders below.