STATE OF CONNECTICUT *v.* PATRICK A. PALUGA

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued June 4—decision released September 14, 1976

*T. Paul Tremont,* special public defender, with whom, on the brief, was *Robert R. Sheldon,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

HOUSE, C. J. This is an appeal by the defendant from a conviction on five counts, one each of assault with intent to commit murder, rape, binding with intent to commit a crime, kidnapping, and indecent assault.

It is unnecessary to recite in detail the sordid facts disclosed by the state's evidence. It suffices to note that the state introduced evidence from which the jury could have found that at about 8:45 on the evening of August 17, 1971, the defendant, impersonating a police officer, stopped an automobile operated by a twenty-two-year-old married woman to whom we will refer as Mrs. S. He claimed that she had been speeding and that it was necessary to take her to the police station. The defendant then drove Mrs. S down several streets, ending on a dirt road where he parked his car, attacked her, and then dragged her over a fence and into a field where he beat her with a leather belt and forced her to engage in acts of oral copulation and intercourse. Thereafter, he tightly tied her hands behind her with a rope, pushed her into a pond, and then stooped behind a stone wall at the water's edge and watched her. She was able to tread water and succeeded in freeing her hands. The defendant then swam after her but she ducked under the surface, eluded the defendant, swam to the opposite shore and escaped.

When he was arrested on August 24, 1971, the defendant denied any involvement with Mrs. S and asserted that on the 17th he had been driven home from work by a fellow worker at about 9 p.m., had supper, drank two or three beers, and then went to bed for the night. When he testified at the trial, however, he admitted that he had engaged in the alleged sex acts with her, but claimed that her actions were all voluntary and that she had slipped or fallen into the water, and that he had jumped into the water with his clothes on to find her and swam around in the dark but was unable to find her. He testified further that on August 18, 1971,

he read in a newspaper article that the police were looking for a man of his description and for a car such as his in connection with a reported rape the previous day. That evening, in the presence of his wife, he called St. Raphael's parish in Bridgeport and asked for a particular priest by name. The person who answered the phone said that that priest was no longer with that parish and that he, the speaker, was a priest. The defendant asked whether the communication was privileged and the other party said "yes." The defendant then stated on the telephone that the police were looking for a man of his description and for a car like his and also that, although he had had sexual intercourse with Mrs. S, the charges were not true. The defendant also testified that he stated on the telephone that he was an ex-convict and that he talked about his wife and himself. The advice given to the defendant over the telephone was to turn himself in to the police or an attorney and to tell his story, but he did not follow the advice.

By authority of an arrest warrant issued by a judge of the Circuit Court, the defendant was arrested on August 24, 1971, on the charges of which he was later convicted. After the defendant's arrest and while he was being held under a mittimus issued by the Circuit Court, the state's attorney for New Haven County applied for and the Superior Court issued a bench warrant and the defendant was taken into custody thereunder on September 10, 1971. The warrant was issued before there was any probable cause hearing in the Circuit Court. On September 14, 1971, the charges pending against the defendant in the Circuit Court were nolled.

Prior to trial, the defendant filed a plea in abatement and motion to quash the information challeng-

ing the validity of the procedure followed in the Superior Court. The plea was overruled and the motion denied.

At the conclusion of the trial, the jury returned a verdict of guilty as charged on all counts of the information. Judgment was rendered, the court sentencing the defendant to be confined in the correctional institution at Somers, for a total effective term of not less than twenty years nor more than thirty-five years.

On his appeal from the judgment, the defendant has pressed several assignments of error. The first of these pertain to the court's ruling relative to his plea in abatement and motion to quash the information. The remaining assignments of error which have been briefed pertain to three issues: first, a claimed prejudicial error in the court's instruction to the jury that they could draw any proper inference from the defendant's refusal to waive his statutory "priest-penitent" privilege and allow the priest to testify; second, the court's refusal to grant the defendant's motion for a mistrial because the state's attorney allegedly commented in his argument to the jury that the defendant's wife's refusal to waive her statutory privilege not to testify was a matter which could logically be used against the defendant; third, the court's instruction to the jury that an act of oral copulation constitutes indecent assault irrespective of whether the adult-participants consented.

The assignments of error which the defendant has not briefed are treated as abandoned. *State* v. *Gosselin,* 169 Conn. 377, 379, 363 A.2d 100.

I

The defendant first assigns as error the conclusion of the trial court that the service of the Superior Court bench warrant superseded the Circuit Court mittimus and brought the defendant within the jurisdiction of the Superior Court. He admits, as he must, that this court has previously considered and rejected the same arguments which he now advances. We adhere to our decisions in *State* v. *Vennard,* 159 Conn. 385, 389, 390, 270 A.2d 837, cert. denied, 400 U.S. 1011, 91 S. Ct. 576, 27 L. Ed. 2d 625; *State* v. *Purvis,* 157 Conn. 198, 205, 251 A.2d 178, cert. denied, 395 U.S. 928, 89 S. Ct. 1788, 23 L. Ed. 2d 246; and *State* v. *Stallings,* 154 Conn. 272, 276–79, 224 A.2d 718, and find no error in the court's conclusion.

The defendant also assigns as error the court's conclusion that his constitutional rights were not violated because no probable cause hearing was held by the Circuit Court and the court's overruling of his claim of law that the Circuit Court which issued a warrant for the defendant's arrest was required by statute (General Statutes § 54-1a) to conduct a probable cause hearing. He also has briefed an assignment of error addressed to the court's conclusion that there was no violation of his constitutional rights in the ex parte issuance of the bench warrant in the absence of his counsel.

Subsequent to the time the defendant raised these issues at the trial, the same claims were considered and decided by this court in *State* v. *Townsend,* 167 Conn. 539, 356 A.2d 125. We there concluded (p. 554) that "[t]he independent determination of probable cause by a judge or a court from sworn

affidavits accompanying a request for a bench warrant satisfies the equal protection clause of the fourteenth amendment to the constitution of the United States where an arrest by a bench warrant eliminates the hearing in probable cause in the Circuit Court." The decision to utilize the bench warrant procedure under § 54-43 of the General Statutes was within the bounds of prosecutorial and judicial discretion. We find no merit to this assignment of error.

As to the error assigned to the court's conclusion that there was no constitutional impediment to the ex parte issuance of the Superior Court bench warrant, "[i]t has been an established procedure in this state that nearly all felony prosecutions, if not bindovers, are initiated in the Superior Court in an ex parte procedure in which the state's attorney submits an application for issuance of a bench warrant." *State* v. *Townsend,* supra, 555; *State* v. *Purvis,* supra. "It is not constitutionally impermissible for a court or judge to issue a bench warrant without the presence of either, or both of, the accused or his counsel." *State* v. *Townsend,* supra, 556; see *United States* v. *Ash,* 413 U.S. 300, 93 S. Ct. 2568, 37 L. Ed. 2d 619.

## II

The defendant next assigns as error the court's charge to the jury concerning the defendant's refusal to waive the statutory "priest-penitent" privilege[1] and its charge as to any inference which might be drawn from such refusal.

---

[1] "[General Statutes] Sec. 52-146b. PRIVILEGED COMMUNICATIONS MADE TO CLERGYMAN. A clergyman, priest, minister, rabbi or practitioner of any religious denomination accredited by the religious body to which he belongs who is settled in the work of the ministry shall not disclose confidential communications made to him in his

The question as to whether or not the defendant refused to waive the benefit of the privilege arose in a confusing situation. The defendant testified in his own defense and in the course of his testimony stated, as we have hereinbefore indicated, that on the day after the incident he had in the presence of his wife talked on the telephone to a priest after he had read in the newspapers that the police were looking for a man of his description in connection with the charges on which he was being tried, that he informed the priest that he thought he was the man being sought, that the charges were not true and that he needed help. He testified that he told the priest that he had had intercourse with the victim and stated that the priest advised him to turn himself in to an attorney or to the police and tell his story. The state's attorney then asked him: "Would you, if the priest were called, waive the privilege that the priest can claim as to what you told him?" Defense counsel interrupted: "Well, now, he can't waive it." The defendant answered: "There's certain parts of the statements I made to the priest that involve my present marriage. And I don't feel that they concern the court, or this trial." State's attorney: "You've answered it, sir." Defense counsel: "Did we get it clear? He would waive the privilege. That's what he said, he would waive it if he could waive." State's attorney: "All right, he won't waive it, that's what he said." Defense counsel: "That's not what he said. And I object to the construing of it." The court then said to the jury: "Well, there again, ladies and gentlemen, you've heard the witness testify. You will

professional capacity in any civil or criminal case or proceedings preliminary thereto, or in any legislative or administrative proceeding, unless the person making the confidential communication waives such privilege herein provided."

determine what the facts are. What Mr. Markle said, and Mr. Tremont said, or even what I say doesn't make any difference. You decide what the facts are."

In its charge to the jury, the court left "what actually transpired on the stand, and what actually transpired in that particular phase of the testimony" to the recollection of the jury, read to them the relevant portion of § 52-146b of the General Statutes (footnote 1) and informed them that "the privilege is Mr. Paluga's; if he wanted to waive it, according to that statute he could. . . . You will note from the law that he has the right to waive the privilege. You should decide whether or not he, in fact, did. If you find that he did not, that a conversation was related to the priest, part of which was related to you, you may draw any proper inference from his refusal to waive the privilege and allow the priest to testify." The defendant duly excepted to the instruction that the jury could draw any proper inference if they found that the defendant did not waive his privilege and permit the priest to testify as to the conversation which the defendant had related he had had with him.

There is a paucity of case law on the question of what is a proper instruction to a jury in the circumstances of the exclusion of a privileged communication as a rule of evidence as distinguished from the exercise of the constitutional privilege against self-incrimination. See annotation, "Propriety and Prejudicial Effect of Comment or Instruction by Court with Respect to Party's Refusal to Permit Introduction of Privileged Testimony," 34 A.L.R.3d 775. As that note observed (p. 778), "[t]he question of the propriety of a

court's instruction either affirming or denying the jury's right to draw an unfavorable inference against a party because the latter objected to the testimony of a witness on the ground of privileged communications subject to conflicting views." On a related subject, see also annotation, "Propriety and Prejudicial Effect of Comment by Counsel as to Refusal to Permit Introduction of Privileged Testimony," 32 A.L.R.3d 906. The Uniform Rule of Evidence 39, "Reference to Exercise of Privileges" (quoted in § 2272, note 2, 8 Wigmore, Evidence, p. 428), proscribes the drawing of an adverse inference from the exercise of the privilege. On the other hand, the Model Code of Evidence adopted by the American Law Institute, Rule 233, although noting that "[t]his rule is the subject of sharp conflict in the authorities" has taken the position that "[i]f a privilege to refuse to disclose, or a privilege to prevent another from disclosing, a matter is claimed and allowed, the judge and counsel may comment thereon, and the trier of fact may draw all reasonable inferences therefrom."

Regardless of any rule of general application, we deem two facts to be of particular significance in the circumstances of the present case. The first is that the defendant testified at length as to what he claimed he told the priest relative to the charges against him and what advice he was given by the priest. The statements he claimed he made were self-serving protestations of his innocence of the charges against him. By his refusal to waive his statutory privilege (if the jury found that he did refuse), he effectively shut off any possibility of impeachment or contradiction of his self-serving testimony. A second significant factor is that by his own testimony his conversation with the priest

was in no way in the course of discipline enjoined by the church by a person seeking religious or spiritual advice, aid or comfort. See *Martin* v. *Bowdern,* 158 Mo. 379, 393, 59 S.W. 227; McCormick, Evidence (2d Ed.) § 77; 97 C.J.S., Witnesses, § 263.

The charge as given by the court was a neutral one consistent with that which we approved even in a constitutional context in *State* v. *Branham,* 171 Conn. 12, 17, 368 A.2d 63. The court did not characterize the inferences which the jury might draw as positive or negative, simply leaving it to the jury if they found that the defendant refused to waive the privilege which was his, to "draw any proper inference from his refusal to waive the privilege." In the light of all the circumstances, we conclude that this neutral charge was proper and a permissible exercise of the court's discretion. Even if it were error, it was clearly harmless since the record contains such substantial and convincing evidence of guilt.

### III

The defendant next assigns as error the charge regarding § 53-217 of the General Statutes which explained the law then in effect[2] as it applied to indecent assault by one person on another. He argues that the charge was erroneous because, he claims, the court misconstrued the meaning of the statute. He also claims that the act of oral copulation between consenting adults does not constitute indecent assault.

---

[2] Section 53-217 has been repealed with the adoption of the new penal code effective on October 1, 1971. Under the Penal Code, an act such as both parties testified took place between them would not be criminal if performed by mutual consent but would be criminal if coerced. See General Statutes § 53a-78 (a) (1).

The court defined indecent assault as "all those acts done by one person to, or upon the body of another, of such a nature that the common sense of society regards them as contrary to good morals and common decency, or as offensive to ordinary modesty or delicacy." Then, quoting almost verbatim from the statute, the court instructed the jury: "The overt act or acts of which assault consists need not be otherwise described in a complaint under this section than as an indecent assault. . . . It shall be no defense to a complaint under this section that the person assaulted consents to the act of violence or to the act of indecency. . . ." General Statutes § 53-217.

The defendant argues that the statute as then in effect was unconstitutional because to find a violation of the statute by consenting adults would involve an unconstitutional invasion of their privacy under the holding of such cases as *Griswold* v. *Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510, and *Eisenstadt* v. *Baird*, 405 U.S. 438, 92 S. Ct. 1029, 31 L. Ed. 2d 349. He asserts that these cases "would appear to establish a constitutionally-protected right to sexual freedom when privately engaged in by consenting adults, irrespective of their marital status."

In view of the evidence that the defendant raped Mrs. S, bound her hands and attempted to drown her and the verdict of the jury finding him guilty of assault with intent to commit murder and guilty of rape, binding with intent to commit a crime and kidnapping, it is highly unlikely that the jury gave much credence to the defendant's claim that she in fact was a consenting party to the indecent assault alleged. Whether they did or not, he has completely

failed to sustain the heavy burden of proving the unconstitutionality of § 53-217 and establishing its unconstitutionality beyond a reasonable doubt. *Kellems* v. *Brown,* 163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678; *Adams* v. *Rubinow,* 157 Conn. 150, 152, 251 A.2d 49. His reliance upon his interpretation of the effect of the decisions in the *Griswold* and *Eisenstadt* cases is entitled to little weight in the light of the more recent per curiam order of the United States Supreme Court, affirming the judgment of the United States District Court for Eastern Virginia, in *Doe* v. *Commonwealth's Attorney,* 425 U.S. 901, 96 S. Ct. 1489, 47 L. Ed. 2d 751, sustaining the constitutionality of the Virginia sodomy statute on its face and as applied to private, consensual homosexual acts. We find no merit to this assignment of error.

## IV

We are precluded from any decisive ruling on the issue underlying the defendant's remaining assignment of error addressed to the court's denial of his motion to order a mistrial. It is the claim of the defendant that during the argument to the jury by the state's attorney the latter made comments improperly calculated to induce the jury to draw an inference adverse to the defendant from the exercise by the defendant's wife of the statutory privilege accorded to her by § 54-84 of the General Statutes not to testify when she was called as a witness by the state during the presentation of the state's case against her husband. The state's attorney denies that that was the purport of his remarks. The arguments of counsel were not transcribed so we have no record of what was actually said and

counsel are in dispute not only as to what was said but as to its purport. Instead of making a precise objection and timely requesting a limiting instruction to the jury if the argument were improper; see *State* v. *Grayton,* 163 Conn. 104, 111–14, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; *State* v. *Benton,* 161 Conn. 404, 412, 288 A.2d 411; the defendant made no request for such an instruction and sought no ruling from the court until after a recess following the conclusion of the state's opening argument at which time he moved for a mistrial on the basis of remarks which he claimed and the state's attorney denied had been made by the state's attorney during argument. He assigns as error the court's denial of this motion.

" 'The general principle is that a mistrial should be granted only as a result of some occurrence on the trial of such a character that it is apparent to the court that because of it a party cannot have a fair trial. *Izzo* v. *Crowley,* 157 Conn. 561, 565, 254 A.2d 904; *Ferino* v. *Palmer,* 133 Conn. 463, 466, 52 A.2d 433 . . . [citation omitted]. *State* v. *Grayton,* supra, 112; *State* v. *Brown,* 169 Conn. 692, 703, 364 A.2d 186. "The trial court has wide discretion in passing on motions for mistrial." *State* v. *Savage,* 161 Conn. 445, 449, 290 A.2d 221. Certainly in view of the circumstances which we have mentioned the defendant has not established any error on the part of the court in exercising its discretion in denying the motion for mistrial.

There is no error.

In this opinion the other judges concurred.